Charles A. Hamm (SBN 359861)
Law Office of Charles A. Hamm
300 Montgomery Ave #Q
Oxnard, CA 93036
Phone: (805) 308-4266
Email: info@law4ca.com

Attorneys for JOHN DIAZ, Plaintiff

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| John Diaz,<br><br>Plaintiff,<br><br>v.<br><br>Lodi Association of Realtors, Central Valley Association of Realtors, CALIFORNIA ASSOCIATION OF REALTORS, and National Association of REALTORS, and DOES 1 through 5, inclusive,<br><br>Defendants. | FILE NO. ___________________<br><br>COMPLAINT - Sherman Antitrust Act, 15 U.S.C. § 1 et seq.<br><br>Demand for Jury Trial |

**COMPLAINT**

## I. JURISDICTION AND VENUE

1. Jurisdiction is proper under 28 U.S.C. §§ 1331, 1337, and 15 U.S.C. § 15. This action arises under the Sherman Antitrust Act, 15 U.S.C. § 1 et seq., as more fully appears below.

2. Venue is proper under 28 U.S.C. § 1391 and 15 U.S.C. § 22, as a substantial portion of the conduct occurred in this District.

## II. INTRODUCTION

3. Plaintiff has an established residential real estate sales brokerage in Modesto, California. As Plaintiff's business focuses predominantly on residential real estate sales and related business activities, Plaintiff is a member of the National Association of Realtors (hereinafter "NAR"), California Association of Realtors (hereinafter "CAR"), the Lodi Association of Realtors (hereinafter "LAR") and the Central Valley Association of Realtors (hereinafter "CVAR"). These associations dominate the local residential real estate sales market through the multiple listing service ("MLS"). These associations also provide other valuable services to residential sales brokers and agents such as key access to listed properties, fillable forms for contacts and disclosures, etc. However, Defendants also require brokers to pay dues for their licensees who are not members of Defendant associations. Plaintiff herein alleges this is anti-competitive and in violation of federal antitrust law.

## III. PARTIES

4. Plaintiff is a natural person, and real estate broker licensed and doing business in the State of California, County of Stanislaus with its principal office and place of business in Modesto, California.

5. Plaintiff is a California licensed broker and member of the Lodi Association of Realtors, the Central Valley Association of Realtors, California Association of Realtors and National Association of Realtors.

6. Plaintiff seeks to hire real estate sales agent licensees at his brokerage, independently of the NAR-CAR-local association membership chain, yet Plaintiff is compelled to pay dues for non-member agents, or lose essential business tools.

7. Defendants include:

a. The Lodi Association of REALTORS, a California nonprofit trade association;

b. The Central Valley Association of REALTORS, a California nonprofit trade association;

c. The California Association of REALTORS ("CAR"), a statewide trade organization affiliated with NAR;

d. The National Association of REALTORS ("NAR"), a nationwide trade organization based in Chicago, Illinois.

8. Plaintiff is ignorant of the true names and capacities of the Defendants sued herein as DOES 1 through 5, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff is informed and believes, and on that basis alleges, that each of these fictitiously named defendants is in some manner responsible, legally, causally, contractually, or otherwise, for the events and matters alleged in this Complaint and proximately caused the injury alleged herein. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Each reference to "Defendants" in this Complaint includes all named defendants and DOES 1 through 5, inclusive.

## IV. FACTUAL ALLEGATIONS

9. Plaintiff, as a broker and through his real estate brokerage, enters into agreements to represent buyers, sellers, landlords and tenants for the sale and leasing of real property throughout California. Under California law, Plaintiff may hire any licensed salesperson ("associate licensee") to work under his brokerage license. These agents would act in the name of Plaintiff's firm, be supervised by Plaintiff as their broker, and would be governed by the same fiduciary standards as any other professional with fiduciary duties.

10. Defendants are trade associations with overlapping and hierarchical membership structures. The National Association of REALTORS ("NAR") mandates that state and local associations adopt and enforce NAR's membership rules, and dues. NAR Bylaw Article 2, Sections 1 and 2 requires a Variable Dues Formula ("VDF") which imposes the dues on brokerages for non-Realtor licensees. NAR affiliated Associations of Realtors, including Defendants herein, enforce variable dues and related policy on behalf of NAR against the local associations.

11. Under VDF, a broker member of the Realtor associations (or the "designated REALTOR® member") is required to pay dues not only for themselves and their licensed agents, but also for every non-member licensee in their firm, regardless of whether those agents join the Realtor Associations for their area.

12. Realtor Membership and services related to the membership are administered by local associations of Realtors. For Plaintiff, in order to gain access to the MLS and related services, Plaintiff has joined Defendant associations LAR and CVAR. This gives him access to CAR services such as

form agreements, notices, disclosures, advisories, etc. as well as access to the MLS. Membership with NAR is a requirement.

13. Failure to pay any dues, including those levied for non-member licensees results in denial of membership and therefore denial of the services provided by the Defendants and similar Associations of Realtors, such access to the Multiple Listing Service (MLS), which is functionally essential to compete in the real estate brokerage market.

14. Plaintiff brings this action under Section 1 of the Sherman Act, asserting that Defendants' coordinated policy constitutes a per se unlawful tying arrangement and a concerted restraint of trade.

15. The relevant product market for purposes of this Complaint is the market for residential real estate brokerage services, including access to multiple listing services (MLS), forms, and related professional tools used in connection with representing buyers, sellers, landlords, and tenants in residential real estate transactions. The relevant geographic market is in all 50 states where Defendants’ coordinated policies are enforced through Defendant NAR and its affiliates nationwide, including the State of California, where Plaintiff operates. Defendants’ conduct substantially affects competition within this defined market by controlling access to essential services, restricting and imposing unreasonable financial burdens on broker hiring decisions, and limiting the ability of non-member licensees to participate in residential real estate transactions.

16. Access to MLS systems is controlled by local associations and are essential to compete in the California residential real estate market.

17. Plaintiff seeks to hire sales agents who opt not to join local Realtor associations. These are licensed sales agents, but not Realtors because they do not join the NAR Associations such as Defendant Associations because of the financial burden that results from the fees they charge.

18. Plaintiff is unable to hire licensed sales agents who are not members without incurring these significant additional fees charged by the Realtor associations or forcing his licensees to pay those additional fees.

19. NAR dues are $201 per member for 2025. This amount is billed to all active REALTOR® and REALTOR® Associate members through their primary local association and is due and owing

to NAR by Jan. 1. Brokers are also assessed NAR dues times the number of non-member salespersons, if any, in their office. NAR also requires as part of the $201, a "special assessment" in the amount of $45 for its purported national advertising campaign. The NAR total requirement is $201. (Please see https://www.nar.realtor/membership/dues-information, last accessed 5-27-2025).

20. All state Associations of Realtors, such as Defendant CAR, charge their members an additional fee to join. These additional state dues paid may vary from Association to Association. Each state association is assessed a different amount by NAR, which is passed on to its members. CAR charges members of the Lodi Association of Realtors $231. CAR charges members of the Ventura County Coastal Association of Realtor members $237 as the base fee with an additional $200 as a "CAR set up fee".

21. Central Valley Association of Realtor (CVAR) does not disclose on their website the breakdown of the fees that are distributed to NAR, CAR and locally. Their total annual membership is currently set at $1073.00 (Please see https://media.salecore.com/GetFile.ashx?p=wU_yPFCE, last accessed 5-27-2025. By navigating to the CVAR website, and clicking "Join CVAR", the above link is generated.). Presumably $201 is for NAR, about $230 for CAR, and the rest for CVAR.

22. Defendant Lodi Association of Realtors currently charges $150 annually for local dues, $231 for CAR dues, and $156 for NAR dues. (Please see https://connectlar.org/resources/pdfs/membership-application.pdf, last accessed 5-27-2025).

23. These figures and fee structures are similar nationwide.

24. For California licensees, the sum of $1000.00 plus is a significant barrier, which discourages them economically from participating in the residential market as real estate agents.

25. Many licensees choose to become or remain inactive in real estate sales for failure to associate with a broker.

26. This by licensees decision is made due to the above described financial barrier.

27. On information and belief, Plaintiff alleges the above-described economic barrier and resulting licensee inactivity is an issue in all or a substantial part of the markets where NAR operates, nationwide.

28. The language of the VDF (Variable Dues Formula), which requires Plaintiff to pay additional dues for each such non-member agent, is based on the National Association of Realtors Bylaw Article 2, Sections 1 and 2 and related sections as follows:

> ***(A)*** *The annual dues of each Member Board (local Board) as defined in Article III, Section 1(B)(1) of the Constitution, shall be in an amount established annually by the Board of Directors at the Midyear Meeting times the sum of the number of REALTOR® and REALTOR-ASSOCIATE® members of the Board and the number of individuals who are licensed with such REALTOR® members of the Board and* ***who are not themselves REALTOR®, REALTOR-ASSOCIATE® or Institute Affiliate members of the Board provided such individuals are not otherwise included in the computation of dues payable by another Member Board.***

29. Similarly, Section 2, paragraph B reads:

> ***(B)*** *For the purpose of this section, a REALTOR® Member of a Member Board shall be held to be any Member who holds primary membership in the Member Board and who, as a sole proprietor, partner, or officer of a real estate firm or corporation or an individual in a position of management control on behalf of principals who are not physically present and engaged in the real estate business in connection with the firm's office, is actively engaged in real estate business as defined in Article III, Section 1 of the Constitution or who is a REALTOR® member of a Member Board pursuant to Article III, Section 1(C)(1)(b) of the Constitution. A REALTOR-ASSOCIATE® Member of a Member Board shall be held to be any Member employed by or affiliated with a REALTOR® Member as a sales employee or independent contractor unless such Member is classified by the member Board as a REALTOR® Member in which case he shall be deemed a REALTOR® Member.* ***An individual licensed in the state within which the board is located or within the state in which the real estate firm of the REALTOR® is located shall be deemed to be licensed with a REALTOR® if the license of the individual is held by a REALTOR® or by any broker who is licensed with the REALTOR®, provided that such licensee is not otherwise included in the computation of dues payable by a sole proprietor, partner, corporate officer or individual in a position of management control of the entity.*** *Upon payment to the National Association of the dues required under Section 1(A) hereof, each REALTOR® and REALTOR-ASSOCIATE® Member in good standing of a Member Board shall be deemed respectively a REALTOR® or REALTOR-ASSOCIATE® Member in good standing of the National Association.*

30. The Realtor system described herein results in a coercive financial penalty for Plaintiff, and for similarly situated Realtor Brokers to associate with non-member licensees. It impairs Plaintiff's and similarly situated brokers' ability to compete with larger firms.

31. This penalty is imposed even where a broker has a legitimate and lawful business interest in hiring licensed agents to perform duties that do not require MLS access or association membership.

32. Like most states, in California, a licensee may perform many functions that require an agent sales license, but which have nothing to do with the Associations of Realtors or MLS services that

are provided. A few of the many examples of said functions are: a) A broker may request licensees to perform Agent Visual Inspections and sign off on the required "Agent Visual Inspection Disclosure" required by California Civil Code Section 2079; b) perform commercial sales; c) leasing activity in either residential or commercial markets - both of which markets the Defendant organizations are not strong in.

33. Non-member licensees often work in areas in which Realtor membership provides little to no benefit, but they are unable to join a Realtor member brokerage or decide not to join a Realtor member brokerage because of the financial barrier.

34. Agents working in commercial property, leasing, or other roles that do not involve residential MLS listings are largely non-Realtors licensees.

35. Defendants' policy punishes member brokers who employ these professionals.

36. Plaintiff is unable to employ said commercial or other agents without incurring an imposition of Defendants' Realtor dues under the VDF.

37. A substantial, materially significant number (probably in the thousands in California, and probably tens of thousands nationally) of real estate agents are unable or economically disincentivized to associate with brokers which are members of NAR affiliated associations.

38. These agents, in materially significant numbers, are not associated with any brokerage because they have not found a residential brokerage which is not a member of an NAR. In other words, these agents have obtained a real estate sales license, but are unable to perform any real estate sales activity because by joining the brokerages that are available to employ them, they would be forced to pay a significant sum of money through Realtor membership requirements alleged herein. Instead, they choose to do no real estate sales.

39. Local Realtor Associations are required to enforce Variable Dues policy. Defendants, or their agents, search publicly available information such as state licensing websites, like the California Department of Real Estate's dre.ca.gov website, for public licensee records to identify firms where non-member agents are found to be associated with Realtor member Brokers, and who are not paying association dues. Defendants then use that information to demand compliance.

40. Plaintiff's injury is concrete, and is not speculative because Plaintiff cannot hire any non-member licensee without the threat of the above-described enforcement. Defendants and all other Associations of Realtors enforce NAR Bylaw, Article 2, and its accompanying Variable Dues Policy because said enforcement is required by NAR. Plaintiff is aware of the enforcement and threats of enforcement, and the fees that are levied against brokers for noncompliance.

41. Defendants and similar associations of Realtors, including Lodi Association of Realtors and Central Valley Association of Realtors send written notices to member brokers or Designated Realtors, demanding Plaintiff and similarly situated brokerages do the following: 1) the broker disassociate with the nonmember licensee, or 2) that the nonmember become a member, or 3) accept a levy of non-member dues.

42. The only way a broker or non-member licensee can avoid paying these demanded additional dues is for the broker to disassociate with the licensee. The only other options the Associations offer is to pay a non-member fee which often is several hundred dollars annually per non-member employed by the broker, or force the non-member to join which also costs several hundred dollars.

43. In order to remove the appearance of antitrust conduct, NAR claims to offer nonmember licensees a limited dues exemption through the so-called "Limited Function Referral Office" (LFRO) policy. This option permits a nonmember licensee to avoid dues obligations only if the licensee is associated with a referral-only entity that is owned and operated by a REALTOR® and which is solely engaged in referring clients or customers to that REALTOR®'s brokerage. To qualify, the licensee must certify that they will not engage in listing, selling, leasing, managing, or appraising real property. In essence, the licensee must surrender their ability to perform any real estate licensed activity they are otherwise legally permitted to perform under the supervision of a broker. This policy has the effect of coercing agents into abandoning lawful real estate activity in order to avoid financial penalties imposed on their broker, and serves as a form of economic pressure that disincentivizes brokerage models which seek to employ nonmember agents for legitimate real estate purposes outside the narrow scope of referral-only activity.

44. A broker's disassociation with a licensee leaves the licensee without an employing broker, rendering the licensee's real estate sales license useless, until they relent and pay Realtor dues, or until they can find the above-described referral only partner, or as alleged below, until they can find a non-member MLS only subscribing broker.

45. Like almost all other states, California law only allows a sales agent to operate if affiliated with a broker, and under the broker's supervision.

46. Further, because of the large market share that NAR enjoys in residential real estate sales, nonmember licensees find it virtually impossible to find a nonmember employing broker, in order to avoid this Variable Dues Policy conundrum.

47. The policy is adopted and enforced in a uniform manner across all levels of the REALTOR organization, pursuant to NAR policy.

48. The above allegations are proof of an illegal group boycott of licensed, non-member sales agents.

49. By using their market dominance, Defendants have devised the above-described policy to either force residential sales agents to become members, or engage in no sales activity.

50. The above-described policy harms Plaintiff and brokers like Plaintiff because they cannot hire willing and able licensees without paying the above-described additional dues to Defendants.

51. The above-described policy harms consumers because it reduces the supply of agents available to perform licensed sales activities. This also prevents willing sales agent licensees from becoming a broker specializing in residential sales because of the difficulty in obtaining the experience requirement in order to, since virtually of the brokerages require Realtor membership.

52. Through the above-described policy, Defendants strengthen their already strong monopolistic force on the residential sales market.

53. There is no legitimate pro-competitive justification for forcing Plaintiff to pay for association benefits that the non-member agents do not receive or want.

54. Members of Defendant associations are no more competent or ethical than non-member sales agents.

55. The result is a chilling effect on independent brokerages and a suppression of alternative business models.

56. While some larger brokerages may find it feasible or beneficial to require uniform association membership among their affiliated licensees, smaller brokerages like Plaintiff's—particularly those serving rural or underserved communities—are disproportionately burdened by Defendants' Variable Dues policy. Plaintiff operates in a smaller regional market, where real estate professionals often prefer flexibility in choosing whether to incur the financial burden of association membership. Defendants' policy forecloses this flexibility by economically coercing brokers to either refuse association with non-member licensees or pay dues on their behalf. This deprives smaller brokerages of a viable workforce and prevents them from operating competitively alongside larger firms with greater capital reserves or more homogeneous staffing models.

57. The policy forecloses a substantial volume of commerce by artificially limiting the number of agents a non-NAR broker may economically supervise.

58. Some, but not all, Associations of Realtors offer an MLS only membership level, which in theory would not result in the imposition of Variable Dues on non-Realtor brokerages. An MLS only (non-Realtor) subscription, where available, would allow Plaintiff and similarly brokerages to obtain MLS access and to be able to hire non-Realtor real estate licensees. However, they would have to give up the other services that the Associations provide through CAR – such as form contracts, legal hotline, free education, exclusive market data and research.

59. Lack of access to the industry standard forms provided by Associations such as Defendant CAR results in a substantial disadvantage to non-member brokers and their agents.

60. Defendants control the price of forms for nonmembers. The price of the CAR forms through Zipforms, the designated entity for providing said service, is currently more than a membership at $1499/year for nonmembers (Please see https://store.car.org/products/zipform%C2%AE-for-non-members#:~:text=Regular%20Price%20$1%2C499.00%20Sale%20Price,Default%20Title%20%2D%20$1%2C499.00, last visited 6-7-2025).

61. The annual price of $1499.00 for forms is clearly an inflated price, and a result of the anti-competitive practices alleged herein.

62. Without access to the proprietary CAR forms—including purchase agreements, disclosure documents, listing contracts, and residential lease forms—non-member brokers are unable to operate on equal footing with member brokers, creating significant transactional friction, legal uncertainty, and lost opportunities.

63. This disparity forces non-members to either risk using inferior or unrecognized forms, hire attorneys for custom drafting at additional cost, or capitulate to membership requirements in order to remain competitive.

64. The result is that the withholding of these critical forms functions as an exclusionary practice that coerces membership and stifles alternative business models.

65. The availability of MLS only membership, where available, was the result of anti-trust litigation against the National Association of Realtors decades ago. But the markets remain largely unchanged due to many other anti-competitive policies that have gone largely unchecked, such as those alleged herein.

66. Defendants, Realtors and Realtor Associations still dominate the residential real estate sales market because of anti-competitive practices and violations of federal and state anti-trust laws.

67. Many Associations of Realtors do not publicly offer MLS only access, if they offer it at all. And even where they offer MLS only access, they still engage in other monopolistic practices and violations of state and federal anti-trust laws.

68. Realtor Associations' market dominance with the herein alleged anti-competitive practices have made it virtually impossible to succeed for non-member brokers, and non-member agents alike.

69. The Variable Dues policy reinforces this monopoly.

## V. CAUSE OF ACTION: VIOLATION OF SHERMAN ACT § 1

70. Plaintiff realleges and incorporates by reference all prior paragraphs as if fully set forth herein.

71. Defendants' conduct constitutes a per se violation of Section 1 of the Sherman Act, as it involves a concerted refusal to deal and a tying arrangement that are inherently anticompetitive.

72. Defendants have engaged in a concerted action to restrain trade by enforcing a uniform policy that conditions essential MLS access on membership dues paid for non-members.

73. Defendants possess and exercise market power over the tying product: MLS access and essential real estate services.

74. The tied product is association membership (or dues payments) for non-member licensees.

75. The Variable Dues Formula compels brokers to either force all agents to join, disassociate or pay their dues for them, reducing competition by making independent or dissenting business models financially nonviable.

76. The policy is an illegal group boycott. Defendants are involved in joint efforts to disadvantage non-member competitors by directly denying or persuading or coercing members to deny relationships the competitors need in order to compete.

77. This policy has no legitimate justification, is not necessary to MLS access, and suppresses inter-broker competition.

78. Even if the above-described conduct are not *per se* antitrust violations, they are unreasonable restraints on trade and competition in the marketplace.

79. As a result of Defendants' conduct, Plaintiff has suffered economic harm and competitive injury.

80. This action is brought and maintained in the public interest and is intended to enforce an important right affecting the public at large, specifically the right to participate in a competitive marketplace free from anticompetitive restraints imposed by powerful trade associations. Plaintiff seeks to eliminate a coercive dues policy that unlawfully penalizes brokers for hiring non-member licensees, which impairs competition, suppresses innovation, and excludes qualified professionals from the real estate industry. The result is reduced consumer choice, artificial inflation of business costs, and market foreclosure for alternative business models in real estate brokerage.

81. The necessity and financial burden of private enforcement in this case are such as to make an award of attorneys' fees appropriate under California Code of Civil Procedure § 1021.5, as the burden of litigation substantially outweighs the individual financial benefit to Plaintiff, and successful

prosecution of this case will confer a significant benefit on the general public, including real estate professionals, brokerages, and consumers seeking greater access to real estate services.

## VI. SECOND CAUSE OF ACTION – VIOLATION OF CALIFORNIA CARTWRIGHT ACT (Cal. Bus. & Prof. Code § 16720 et seq.)

82. Plaintiff realleges and incorporates by reference all prior paragraphs as if fully set forth herein.

83. Defendants, by and through their coordinated adoption and enforcement of the Variable Dues Formula and associated rules, have engaged in a combination and conspiracy in restraint of trade or commerce in violation of California Business and Professions Code § 16720 et seq. (the Cartwright Act).

84. The Variable Dues Formula requires brokers to pay dues for licensees who are not members of Defendants' associations or to compel those licensees to join. Failure to do so results in denial of MLS access and other essential services. This is a coercive restraint that limits broker autonomy and suppresses alternative brokerage business models.

85. The relevant market is the provision of residential real estate brokerage services in California. Defendants possess and exercise significant market power over this market, particularly through their control of the MLS and key professional infrastructure.

86. Defendants' conduct constitutes an unlawful group boycott, tying arrangement, and combination in restraint of trade, all of which are prohibited by the Cartwright Act.

87. Plaintiff has suffered economic harm as a result of Defendants' conduct, including the inability to hire or associate with licensees unless additional dues are paid or those licensees surrender their rights to engage in licensed real estate activity.

88. There is no procompetitive justify cation for Defendants' conduct. The restraint has the effect of substantially lessening competition, excluding lawful professionals from the market, and increasing costs for brokers and ultimately consumers.

89. Plaintiff seeks injunctive relief to enjoin the unlawful conduct, a declaration of illegality, and recovery of attorneys' fees and costs pursuant to applicable California law.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A. Declaring Defendants' actions unlawful under Section 1 of the Sherman Act;

B. Enjoining enforcement of the relevant portions of National Association or Realtors Bylaw Article 2, Sections 1 and 2, and its related Variable Dues Formula as applied to non-member licensees;

C. Awarding Plaintiff costs and attorneys' fees pursuant to California Code of Civil Procedure § 1021.5 as well as any other authority granting attorney fees;

D. Granting such other and further relief as the Court deems just and proper.

Dated: 6-9-2025

Law Office of Charles A. Hamm

Attorney for Plaintiff, John Diaz

**NOTICE OF INTERESTED PARTIES**

Plaintiff's counsel, provides the following voluntary disclosure in the interest of transparency and candor to the Court. Plaintiff's attorney, Charles A. Hamm, is a licensed real estate broker and owns an interest in a non-party corporate entity which is a dues-paying member of National Association of Realtors (NAR) and California Association of Realtors (CAR). Neither Mr. Hamm nor his corporation is a party to this action. This Notice is made to disclose that neither Mr. Hamm nor his corporation have a direct financial interest in the outcome of this case beyond any attorney fees award, the relief that would become available to all similarly situated brokers and market participants, and general market impacts shared by consumers, similarly situated Realtor members and brokers.

Dated: 6-9-2025

Law Office of Charles A. Hamm

Attorney for Plaintiff, John Diaz