WHITE & CASE LLP
Jeremy Ostrander (SBN 233489)
jostrander@whitecase.com
3000 El Camino Real
2 Palo Alto Square, Suite 900
Palo Alto, CA 94306-2109
Telephone:  (650) 213-0300
Facsimile:   (650) 213-8158

*Attorney for Defendants National Association
of REALTORS®, California Association of
REALTORS®, Lodi Association of
REALTORS®, and Central Valley Association
of REALTORS®*

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DIAZ,<br><br>   Plaintiff,<br><br>  v.<br><br>LODI ASSOCIATION OF REALTORS®, CENTRAL VALLEY ASSOCIATION OF REALTORS®, CALIFORNIA ASSOCIATION OF ASSOCIATION OF REALTORS®, NATIONAL ASSOCIATION OF REALTORS®, AND DOES 1 THROUGH 5, INCLUSIVE,<br><br>   Defendants. | Case No. 2:25-cv-01594-DC-CKD<br><br>**DEFENDANTS NATIONAL ASSOCIATION OF REALTORS®, CALIFORNIA ASSOCIATION OF REALTORS®, LODI ASSOCIATION OF REALTORS®, AND CENTRAL VALLEY ASSOCIATION OF REALTORS® NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>**Date:  August 22, 2025**<br>**Time:  1:30 p.m.**<br>**Courtroom: 8, 13th Floor** |

## NOTICE OF MOTION AND STATEMENT OF RELIEF SOUGHT

PLEASE TAKE NOTICE that on August 22, 2025, or as soon thereafter as the matter may

be heard, in the Courtroom of the Honorable Dena M. Coggins, United States Judge for the Eastern

District of California, Defendants National Association of REALTORS®, California Association

of REALTORS®, Lodi Association of REALTORS®, and Central Valley Association of REALTORS® (together "Defendants") will, and hereby do, move this Court pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Plaintiff's Complaint on the grounds that this Court lacks subject matter jurisdiction and because Plaintiff has failed to state facts sufficient to make out a claim for which this Court can grant relief.

On July 8–10, 2025, Counsel for Defendants conferred with counsel for Plaintiff via email to discuss the substance of this Motion and potential resolution of this dispute.  The parties were unable to resolve any of the bases of Defendants' Motion.

This Motion is based on the following memorandum of points and authorities, and on such evidence and arguments as may be presented prior to or at the time of any hearing of this Motion.

Dated: July 14, 2025

WHITE & CASE LLP

By: */s/ Jeremy Ostrander*
Jeremy Ostrander (SBN 233489)
3000 El Camino Real
2 Palo Alto Square, Suite 900
Palo Alto, California 94306-2109
Tel: 650-213-0300
Fax: 650-213-8158

*Attorney for Defendants National Association of REALTORS®, California Association of REALTORS®, Lodi Association of REALTORS®, and Central Valley Association of REALTORS®*

# TABLE OF CONTENTS

**Page(s)**

I.      INTRODUCTION ........................................................................................................... 1

II.     PROCEDURAL HISTORY............................................................................................. 2

III.    FACTUAL ALLEGATIONS............................................................................................ 3

IV.     LEGAL STANDARD...................................................................................................... 5

V.      ARGUMENT .................................................................................................................. 6

        A.      Plaintiff Lacks Article III Standing Because He Does Not Allege that He
                Suffered Injury ..................................................................................................... 6

        B.      Plaintiff Fails to Allege Facts Sufficient to State a Sherman Act Section 1
                Claim.................................................................................................................... 9

                1.      Plaintiff's Complaint Should Be Dismissed Because His
                        Ambiguous Allegations About Injury to Various Disparate Groups
                        Do Not Establish Antitrust Injury ............................................................. 10

                2.      Plaintiff's Complaint Should Be Dismissed Because He Fails to
                        Plead Plausible Product or Geographic Markets........................................ 14

                3.      Plaintiff's Allegations, that Payment for a Service Is Unlawfully
                        Tied to that Same Service, Do Not State a Tying Claim ........................... 16

                4.      Plaintiff's Amorphous Facts Fail to Support a Group Boycott
                        Claim........................................................................................................... 19

        C.      Plaintiff Fails to Allege Facts Sufficient to State a Cartwright Act Claim ............ 23

                1.      Plaintiff's Group Boycott and Restraint of Trade Claims Under the
                        Cartwright Act Fail for the Same Reasons His Sherman Act Claims
                        Fail .............................................................................................................. 23

                2.      Plaintiff's Cartwright Act Tying Claim Fails Because Plaintiff Has
                        Not Established Either Competition in the Tied Product Market or
                        an Actual Purchase of the Tied Product..................................................... 24

VI.     CONCLUSION.............................................................................................................. 25

DEFENDANTS' MOTION TO DISMISS                                CASE NO. 2:25-cv-01594-DC-CKD

1

## <u>TABLE OF AUTHORITIES</u>

2
**Page(s)**

3

### **CASES**

4

*Alcoa, Inc. v. Bonneville Power Admin.*,
  698 F.3d 774 (9th Cir. 2012).........................................................................................................8

5

6

*Arcell v. Google LLC*,
  744 F. Supp. 3d 924 (N.D. Cal. 2024) ...............................................................................12, 13

7

*Ariz. Libertarian Party v. Bennett*,
  784 F.3d 611 (9th Cir. 2015)..........................................................................................................3

8

9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..........................................................................................................5, 6, 7, 19

10

11

*Bahr v. Canon U.S.A., Inc.*,
  656 F. App'x 276 (9th Cir. 2016) ...............................................................................................17

12

13

*Barfuss v. Live Nation Entm't, Inc.*,
  No. 23-cv-1114, 2025 U.S. Dist. LEXIS 92246 (C.D. Cal. May 14, 2025) ............................20

14

*Bay Area Surgical Mgmt. LLC v. Aetna Life Ins. Co.*,
  166 F. Supp. 3d 988 (N.D. Cal. 2015) .......................................................................................12

15

16

*Bay Area Surgical Mgmt. LLC v. Aetna Life Ins. Co.*,
  No. 15-cv-1416, 2016 U.S. Dist. LEXIS 93263 (N.D. Cal. July 18, 2016)..............................20

17

*Becton, Dickinson & Co. v. Cytek Biosciences Inc.*,
  No. 18-cv-933, 2019 U.S. Dist. LEXIS 24569 (N.D. Cal. Feb. 14, 2019) .................................5

18

19

*Becton, Dickinson & Co. v. Cytek Biosciences, Inc.*,
  No. 18-cv-933, 2019 U.S. Dist. LEXIS 119276 (N.D. Cal. July 17, 2019)..............................24

20

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..................................................................................................................5, 20

21

22

*Big Bear Lodging Ass'n v. Snow Summit, Inc.*,
  182 F.3d 1096 (9th Cir. 1999).......................................................................................................15

23

24

*Brantley v. NBC Universal, Inc.*,
  675 F.3d 1192 (9th Cir. 2012)..........................................................................................11, 17, 19

25

*Brown Shoe Co. v. United States*,
  370 U.S. 294 (1962)..........................................................................................................................15

26

27

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
  429 U.S. 477 (1997)............................................................................................................................0

28

*Buyer's Corner Realty, Inc. v. N. Ky. Ass'n of Realtors*,
   410 F. Supp. 2d 574 (E.D. Ky. 2006),
   *aff'd*, 198 F. App'x 485 (6th Cir. 2006)...................................................................................4

*CALID, Inc. v. Apple, Inc.*,
   85 F.4th 948 (9th Cir. 2023)...............................................................................................15, 16

*Cargill, Inc. v. Monfort of Colo., Inc.*,
   479 U.S. 104 (1986)..............................................................................................................10

*Caudel v. Amazon.com, Inc.*,
   No. 20-cv-848, 2021 U.S. Dist. LEXIS 199639 (E.D. Cal. Oct. 15, 2021)...............................9

*Chakong Thao v. Swarthout*,
   No. 21-cv-731, 2024 U.S. Dist. LEXIS 234278 (E.D. Cal. Dec. 27, 2024) ..............................5

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
   598 F.3d 1115 (9th Cir. 2010)................................................................................................7

*Cherrone v. Florsheim Dev.*,
   2012 U.S. Dist. LEXIS 172778 (E.D. Cal. Dec. 4, 2012)...................................................16, 19

*City of Oakland v. Oakland Raiders*,
   20 F.4th 441 (9th Cir. 2021)...............................................................................................21, 23

*Consol. Metal Prods. v. Am. Petroleum Inst.*,
   846 F.2d 284 (5th Cir. 1988).................................................................................................13

*Dream Big Media Inc. v. Alphabet Inc.*,
   No. 22-cv-2314, 2022 U.S. Dist. LEXIS 199908 (N.D. Cal. Nov. 1, 2022) .....................18, 19

*Fed. Trade Comm'n v. Indiana Fed'n of Dentists*,
   476 U.S. 477 (1986)..............................................................................................................10

*Feitelson v. Google Inc.*,
   80 F. Supp. 3d 1019 (N.D. Cal. 2015) ...................................................................................12

*Findling v. Realcomp II, Ltd*,
   No. 17-cv-11255, 2018 U.S. Dist. LEXIS 47082 (E.D. Mich. Mar. 22, 2018) .................10, 18

*Fireworks Lady & Co., LLC v. Firstrans Int'l Co.*,
   No. 18-cv-10776, 2019 U.S. Dist. LEXIS 130887 (C.D. Cal. Apr. 23, 2019) .........................17

*FLAA v. Hollywood Foreign Press Ass'n*,
   55 F.4th 680 (9th Cir. 2022)........................................................................................10, 16, 24

*FTC v. Superior Court Trial Lawyers Ass'n*,
   493 U.S. 411 (1990)..............................................................................................................20

*Golden Boy Promotions LLC v. Haymon*,
   No. 15-cv-3378, 2017 U.S. Dist. LEXIS 29782 (C.D. Cal. Jan. 26, 2017) ..............................18

*Golden Gate Pharm. Servs. v. Pfizer, Inc.*,
   433 F. App'x 598 (9th Cir. 2011) ............................................................................................14

*GreenCycle Paint, Inc. v. PaintCare, Inc.*,
   No. 15-cv-4059, 2016 U.S. Dist. LEXIS 47960 (N.D. Cal. Apr. 8, 2016) ...............................11

*Hip Hop Bev. Corp. v. Monster Energy Co.*,
   733 F. App'x 380 (9th Cir. 2018) ............................................................................................16

*Hodl L. PLLC v. United States SEC*,
   No. 23-55810, 2024 U.S. App. LEXIS 21227 (9th Cir. Aug. 22, 2024) ....................................8

*Hogan v. Amazon.com, Inc.*,
   No. 21-cv-996, 2024 U.S. Dist. LEXIS 44574 (W.D. Wash. Mar. 13, 2024) ..........................10

*In re Silver Lake Grp., LLC Sec. Litig.*,
   108 F.4th 1178 (9th Cir. 2024)..................................................................................................6

*In re Webkinz Antitrust Litig.*,
   695 F. Supp. 2d 987 (N.D. Cal. 2010) .....................................................................................13

*Int'l Norcent Tech. v. Koninklijke Philips Elecs. N.V.*,
   No. 07-cv-43, 2007 U.S. Dist. LEXIS 89946 (C.D. Cal. Oct. 29, 2007),
   *aff'd*, 323 F. App'x 571 (9th Cir. 2009).....................................................................................13

*Key v. Qualcomm Inc.*,
   129 F.4th 1129 (9th Cir. 2025)................................................................................................25

*Korea Kumho Petrochemical v. Flexsys Am. LP*,
   No. 07-cv-1057, 2007 U.S. Dist. LEXIS 61373 (N.D. Cal. Aug. 4, 2007) ..............................24

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983)......................................................................................................................5

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)............................................................................................................6, 8, 9

*Lunn v. City of Los Angeles*,
   629 F. Supp. 3d 1007 (C.D. Cal. 2022)......................................................................................7

*Marin Cnty. Bd. of REALTORS®, Inc. v. Palsson*,
   549 P.2d 833 (Cal. 1976) ...............................................................................................5, 15, 23

*McGlinchy v. Shell Chemical Co.*,
   845 F.2d 802 (9th Cir. 1988)............................................................................................12, 23

*Morgan, Strand, Wheeler & Biggs v. Radiology, Ltd.*,
   924 F.2d 1484 (9th Cir. 1991)................................................................................................15

*Morrison v. Viacom Inc.*,
   66 Cal. App. 4th 534 (1998)...................................................................................................24

2a4e97a1a947c88c

*Newman v. Universal Pictures*,
  813 F.2d 1519 (9th Cir. 1987)....................................................................................11

*Norcal Outdoor Media, LLC v. Becerra*,
  No. 19-cv-2338, 2020 U.S. Dist. LEXIS 241036 (E.D. Cal. Dec. 21, 2020) ...........................9

*NorthBay Healthcare Grp., Inc. v. Kaiser Found. Health Plan, Inc.*,
  305 F. Supp. 3d 1065 (N.D. Cal. 2018) ...................................................................13

*Ohio v. Am. Express Co.*,
  585 U.S. 529 (2018)....................................................................................9

*Pac. Steel Grp. v. Commercial Metals Co.*,
  20-cv-7683, 2021 U.S. Dist. LEXIS 97113 (N.D. Cal. May 21, 2021)....................................14

*Phil Tolkan Datsun, Inc. v. Greater Milwaukee Datsun Dealers' Advertising Asso.*,
  672 F.2d 1280 (7th Cir. 1982)........................................................................10

*Pope v. Miss. Real Est. Comm'n*,
  695 F. Supp. 253 (N.D. Miss. 1988),
  *aff'd*, 872 F.2d 127 (5th Cir. 1989)..............................................................10, 22

*Reiser v. Microsoft Corp.*,
  No. 98-17037, 2000 U.S. App. LEXIS 5901 (9th Cir. Feb. 16, 2000) ....................................17

*Reveal Chat Holdco, LLC v. Facebook, Inc.*,
  471 F. Supp. 3d 981 (N.D. Cal. 2020) .................................................................11

*Rutter v. Bright Horizons Family Sol. Inc.*,
  No. 23-cv-233, 2024 WL 278928 (W.D. Wash. Jan. 25, 2024) ..............................................8

*Sacco v. Mouseflow, Inc.*,
  No. 20-cv-2330, 2022 U.S. Dist. LEXIS 179071 (E.D. Cal. Sept. 30, 2022)...............................19

*Shajar Abid v. Google LLC*,
  No. 18-cv-981, 2018 U.S. Dist. LEXIS 93649 (N.D. Cal. June 4, 2018)...................................22

*Smith v. Pro Football, Inc.*,
  593 F.2d 1173 (D.C. Cir. 1978) .......................................................................21

*Somers v. Apple, Inc.*,
  729 F.3d 953 (9th Cir. 2013)..........................................................................11

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016).................................................................................6, 9

*Stahl Law Firm v. West*,
  No. 13-cv-1668, 2013 U.S. Dist. LEXIS 130780 (N.D. Cal. Sept. 12, 2013) ...............................9

*Strawflower Elecs., Inc. v. Radioshack Corp.*,
  No. 05-cv-0747, 2005 U.S. Dist. LEXIS 45205 (N.D. Cal. Sept. 20, 2005) ...............................17

*Ticketmaster L.L.C. v. RMG Techs., Inc.*,
    536 F. Supp. 2d 1191 (C.D. Cal. 2008).......................................................................14

*United States v. Realty Multi-List, Inc.*,
    629 F.2d 1351 (5th Cir. 1980)...........................................................................18, 22

## STATUTES AND RULES

Federal Rule of Civil Procedure 12(b)(1) ...........................................................................5

Federal Rule of Civil Procedure 12(b)(6) ...........................................................................5

## MISCELLANEOUS

NAR Bylaws Art. II, National Association of REALTORS® (Nov. 17, 2023),
    https://www.nar.realtor/about-nar/governing-documents/nar-constitution-bylaws...................4

NAR Bylaws Art. IV, National Association of REALTORS® (Nov. 17, 2023),
    https://www.nar.realtor/about-nar/governing-documents/nar-constitution-bylaws...................3

NAR Bylaws Art. V, National Association of REALTORS® (Nov. 17, 2023),
    https://www.nar.realtor/about-nar/governing-documents/nar-constitution-bylaws...................3

NAR Constitution Art. II, National Association of REALTORS® (Nov. 17, 2023),
    https://www.nar.realtor/about-nar/governing-documents/nar-constitution-bylaws...............3, 4

Phillip E. Areeda (late) & Herbert Hovenkamp,
    *Antitrust Law: An Analysis of Antitrust Principles and Their Application* §1901e, 2200a
    (Fourth and Fifth Editions, 2025 Cum. Supp. 2018-2023)
    .................................................................................................................................20, 21

REALTOR®, U.S. Patent and Trademark Office, https://tsdr.uspto.gov/#caseNumber
    =86074386&caseSearchType=US_APPLICATION&caseType=DEFAULT&searchType=
    statusSearch...........................................................................................................3

*REALTORS® Membership Dues Information*, National Association of REALTORS®,
    https://www.nar.realtor/membership/dues-information.............................................4

## I.    **INTRODUCTION**

Plaintiff John Diaz admits that as a real estate broker and a paying member of each Defendant organization—National Association of REALTORS®, California Association of REALTORS®, Lodi Association of REALTORS®, and Central Valley Association of REALTORS®—he receives myriad benefits from his memberships.  Indeed, his Complaint describes and recognizes the associations' "valuable services to residential sales brokers and agents such as key access to listed properties, fillable forms for contacts and disclosures, etc." Compl. ¶ 3. Plaintiff appears to have brought this antitrust case because, while he has not hired any real-estate licensees to be an agent in his brokerage, he has an apparent desire to do so.  Although Plaintiff does not allege Defendants impose any restriction on Plaintiff's ability to hire agents who are not members of a REALTOR® association, Plaintiff wants to do so without paying the required fees for these agents who necessarily benefit from the "valuable services" Plaintiff concedes his brokerage receives from Defendants.

Specifically, Plaintiff alleges that Defendants' membership payment structure—the Dues Formula (referred to in the Complaint as the "Variable Dues Formula")—is the foundation for his tying and group boycott claims.  Compl. ¶¶ 10, 14, 48.  Plaintiff alleges that the Dues Formula requires Plaintiff to not only pay fees for his own membership, for which he receives the benefits of being a REALTOR®, but also that the Dues Formula requires him to pay a fee for any licensed real estate agent he hires who is not a member of the REALTOR® associations.  *Id.* ¶¶ 10–12.  Yet Plaintiff also acknowledges that this dues structure is objectively administered based on the number of agents at a brokerage.  *See id.* ¶ 28.  Indeed, the Dues Formula prevents the type of free riding Plaintiff is asking for.

Plaintiff also repeatedly asserts the incorrect allegation that Plaintiff's access to multiple listing services ("MLSs") (which, among other things, compile home listings in a given market), is tied to membership in Defendants' organizations.  *E.g.*, *id.* ¶¶ 3, 12, 13, 16, 58.  The Complaint does not include a single factual allegation about *which* MLS is at issue, let alone *how* the Defendant associations control MLSs.  And there is good reason for Plaintiff's conspicuous omissions— REALTOR® associations in California do not require association membership to access any

association-owned MLS, which Plaintiff, as a real-estate broker, knows.

Fundamentally, Defendants are unable to discern the contours of Plaintiff's antitrust claims, which must be dismissed for various threshold reasons.

*First*, Plaintiff lacks standing to bring this case because he has not pled *any* injury.  While Plaintiff's allegations stem from the alleged unfairness of the Dues Formula with respect to a broker's non-member agent(s), he does not allege that he has any agents at his brokerage, let alone ones who are not REALTORS®.  Nor does he plead plausible factual allegations that failing to hire non-member licensees harmed him.

*Second*, Plaintiff's allegations as to the Sherman Act Section 1 claim are woefully deficient: (1) Plaintiff does not establish he has antitrust standing because his allegations do not show antitrust injury—i.e., harm to competition; (2) Plaintiff does not allege facts supporting plausible product or geographic markets, and accordingly, does not allege Defendants have market power; (3) Plaintiff does not allege a tying claim because his "tying" and "tied" products are not two distinct products, and because he fails to establish any other element of a tying claim; and (4) Plaintiff does not allege a group boycott because the allegations are not clear enough to put Defendants on notice of *what* is being boycotted, let alone that Defendants intended to harm competition through their alleged conduct.

*Third*, for similar reasons, Plaintiff does not allege sufficient facts to establish group boycott or tying claims under California's Cartwright Act.

Plaintiff's attempt to contort his complaints about the Dues Formula into federal and state antitrust violations by invoking buzzwords and bare conclusions does not meet the threshold to survive a motion to dismiss.  Plaintiff has not pled any injury and for that reason he lacks standing under Rule 12(b)(1).  Plaintiff also fails to plausibly plead any antitrust claim under Rule 12(b)(6) and *Twombly*.  Plaintiff's Complaint should therefore be dismissed with prejudice.

## II.    PROCEDURAL HISTORY

On November 1, 2024, Plaintiff filed a complaint in the Central District of California against the National Association of REALTORS® ("NAR"), California Association of REALTORS® ("CAR"), Lodi Association of REALTORS® ("LAR"), and MetroList (an MLS not owned by a

REALTOR® association).  *Diaz v. Nat'l Ass'n of REALTORS® et al.*, No. 2:24-cv-9621 (C.D. Cal. Nov. 1, 2024).  That Complaint was based solely on the factually incorrect theory that Defendants unlawfully tied MLS access to association membership.  Complaint ¶¶ 9–14, *Diaz v. Nat'l Ass'n of REALTORS® et al.*, No. 2:24-cv-9621 (C.D. Cal. Nov. 1, 2024), ECF No. 1.  On December 23, 2024 the court dismissed the action without prejudice for failure to comply with the court's order to cure deficiencies in the complaint.  *Id.* at ECF No. 8.

On June 9, 2025, Plaintiff filed this action in the Eastern District of California against Defendants NAR, CAR, LAR, Central Valley Association of REALTORS® ("CVAR"), and five John Does, alleging violations of Section 1 of the Sherman Act and the California Cartwright Act. ECF No. 1.

## III.    FACTUAL ALLEGATIONS

**NAR, CAR, LAR, and CVAR.**  NAR is a national trade organization that provides services, education, and support to its members (including real estate brokers, salespeople, and others in the real estate industry) throughout the United States.  Compl. ¶¶ 3, 7(d), 57.[1]  Members of NAR are called "REALTORS®," which is NAR's registered trademark.[2]  REALTORS® must subscribe to a strict Code of Ethics.[3]  Like NAR, CAR is a trade organization that supports REALTORS® who operate in California.  *Id.* ¶¶ 7(c), 12.  LAR and CVAR are also trade organizations that support REALTORS® within their respective defined geographic regions in California.  *Id.* ¶¶ 7(a), 7(b), 12.

Plaintiff consistently acknowledges the benefits and services that membership in the local, state, and national REALTOR® associations provide to paying members.  Plaintiff alleges these

---

[1]  NAR Constitution Art. II, National Association of REALTORS® (Nov. 17, 2023), https://www.nar.realtor/about-nar/governing-documents/nar-constitution-bylaws (cited in Compl. ¶¶ 28–29).

[2]  NAR Bylaws Art. V, National Association of REALTORS® (Nov. 17, 2023), https://www.nar.realtor/about-nar/governing-documents/nar-constitution-bylaws (cited in Compl. ¶¶ 28–29); *see also* REALTOR®, U.S. Patent and Trademark Office, https://tsdr.uspto .gov/#caseNumber=86074386&caseSearchType=US_APPLICATION&caseType=DEFAULT& searchType=statusSearch.  A court may take judicial notice of official information on a government website "the accuracy of which is undisputed."  *Ariz. Libertarian Party v. Bennett*, 784 F.3d 611, 616 n.3 (9th Cir. 2015).

[3]  NAR Bylaws Art. IV, National Association of REALTORS® (Nov. 17, 2023), https://www.nar.realtor/about-nar/governing-documents/nar-constitution-bylaws (cited in Compl. ¶¶ 28–29).

DEFENDANTS' MOTION TO DISMISS                    CASE NO. 2:25-cv-01594-DC-CKD

services include form agreements, notices, disclosures, and advisories. *Id.* ¶ 12.

**The Dues Formula.** The Dues Formula is the focus of Plaintiff's Complaint. *E.g.*, *id.* ¶¶ 10–11, 19–23, 28–29, 36, 39–40. Under the Dues Formula, real estate brokerages with principals who are themselves REALTORS® (i.e., the designated broker) pay dues based on the size of the brokerage, i.e., based on the number of individuals licensed with the designated broker-REALTOR®. This pro rata assessment is used to cover costs associated with providing services to a brokerage and to the agents affiliated with that brokerage.[4] In other words, the designated broker-REALTOR®'s brokerage pays dues proportional to the number of agents affiliated with the REALTOR®, who will necessarily make use of the services and forms offered as part of the REALTOR® membership, but who do not personally hold membership and pay no dues (non-member agents).[5] *Id.* Under the Dues Formula, any benefits of association services that the non-member agents realize accrue to them solely through their relationship with the designated REALTOR®.[6] *Id.*

Plaintiff has not alleged that he was ever charged a pro rata fee for a non-member agent or that he was unable to pay such fee for a non-member agent he wished to hire.

**MLSs.** An MLS is "a computerized database of homes for sale" in a given area. *Buyer's Corner Realty, Inc. v. N. Ky. Ass'n of Realtors*, 410 F. Supp. 2d 574, 576 (E.D. Ky. 2006), *aff'd*, 198 F. App'x 485 (6th Cir. 2006). Plaintiff vaguely alleges that the Defendants "dominate the local residential real estate sales market through the [MLS]." Compl. ¶ 3. But Plaintiff alleges no facts about what MLS is at issue for his case—i.e., what "local residential real estate sales market" he complains about—or the relationship between any individual Defendant and an MLS. Indeed, Plaintiff concedes that depending on the entity, MLS access without association membership is available—Plaintiff does not allege what entities *do not* allow an "MLS only membership level."

---

[4] *REALTORS® Membership Dues Information*, National Association of REALTORS®, https://www.nar.realtor/membership/dues-information (cited in Compl. ¶ 19); NAR Bylaws Art. II, National Association of REALTORS® (Nov. 17, 2023), https://www.nar.realtor/about-nar/governing-documents/nar-constitution-bylaws (cited in Compl. ¶¶ 28–29); *id.*, NAR Constitution Art. II, sec. 1 ("The objects of the National Association shall be: To provide a facility for education, research and exchange of information for those engaged in the recognized branches of the real estate business . . . .").
[5] *Id.*
[6] *Id.*

*Id.* ¶ 58.  Tellingly, Plaintiff also asserts that he "joined Defendant associations LAR and CVAR" to supposedly "gain access to the MLS and related services," but alleges *no facts* supporting that he was required to join LAR and CVAR for MLS access.  *Id.* ¶ 12; *see also id.* ¶ 16.  Nor could he. In California, MLSs do not require REALTOR® membership to participate in an MLS, as Plaintiff appears to recognize.  *See id.* ¶ 65; *see Marin Cnty. Bd. of REALTORS®, Inc. v. Palsson*, 16 Cal. 3d 920, 938, 940 (1976) (recognizing that membership association "may permissibly provide some exclusive benefits to its members," but holding that the association must eliminate its rule "denying access of nonmembers to the multiple listing service," while permitting the association to "charg[e] a reasonable fee for use of the service consistent with the per-capita costs of operation").

**Plaintiff's Business & Association Membership.**  Plaintiff is a California-licensed broker and member of NAR, CAR, LAR, and CVAR.  Compl. ¶ 5.

While Plaintiff alleges the hypothetical impact of the Dues Formula (*e.g.*, *id.* ¶¶ 6, 11), Plaintiff does not allege that he has hired *any* real estate agents, let alone non-member agents.  The Complaint also lacks any facts supporting that Plaintiff was prevented from hiring non-member agents, that he decided not to hire non-member agents, or that he was required to pay fees for any non-member agents.  Nor does Plaintiff allege facts supporting that his business was harmed due to a purported inability to hire non-member agents.

## IV.  LEGAL STANDARD

Defendants move to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Failure to plead Article III standing requires dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction.  *See City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983) ("[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Art. III of the Constitution by alleging an actual case or controversy."); *Chakong Thao v. Swarthout*, No. 21-cv-731, 2024 U.S. Dist. LEXIS 234278, at *5–11 & n.4 (E.D. Cal. Dec. 27, 2024) (dismissing complaint under Rule 12(b)(1) for lack of standing).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (holding that an

antitrust complaint must be dismissed for failing to "state a claim to relief that is plausible on its face").  While a court must accept well-pleaded facts as true, conclusory allegations and unwarranted inferences cannot defeat a motion to dismiss.  *Iqbal*, 556 U.S. at 678–79.  On a motion to dismiss, a court may consider documents incorporated by reference into the complaint—"[a] complaint incorporates a document by reference 'if the plaintiff refers extensively to the document.'"  *In re Silver Lake Grp., LLC Sec. Litig.*, 108 F.4th 1178, 1186 n.5 (9th Cir. 2024) (citation omitted).

## V.    ARGUMENT

Plaintiff's Complaint should be dismissed.  First, the Complaint lacks allegations establishing that Plaintiff has suffered any injury sufficient to satisfy Article III standing.  Plaintiff does not allege that he has hired, or that he has been unable to hire, any non-member agents, and therefore Plaintiff fails to adequately plead payment of money or loss of opportunity that would constitute injury in fact for standing purposes.  The Complaint should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1).

Second, even if Plaintiff did have standing, his allegations do not state an antitrust violation under either the Sherman Act or the Cartwright Act.  Plaintiff's vague and conclusory allegations lack the fundamental requirements of an antitrust claim, including antitrust injury and a properly defined relevant market.  As for the alleged anticompetitive conduct, the Complaint also fails to include facts supporting tying or group boycott claims and the Complaint should be dismissed for failure to state a claim under Rule 12(b)(6).

### A.    Plaintiff Lacks Article III Standing Because He Does Not Allege that He Suffered Injury

The "irreducible constitutional minimum" of Article III standing has three elements: (1) an injury in fact; (2) that is fairly traceable to the challenged conduct of the defendant; and (3) that is likely to be redressed by a favorable decision of the court.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).  "[T]he injury-in-fact requirement requires a plaintiff to allege an injury that is both 'concrete and particularized.'"  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 334 (2016) (vacating judgment where court failed to independently consider the concreteness of an alleged injury).  On

a Rule 12(b)(1) motion, the plaintiff bears the burden of establishing he has Article III standing to assert each claim. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010) (dismissing case because the plaintiff had not alleged facts to establish that his injury was fairly traceable to the defendant's conduct). The pleading standards set forth in *Twombly* and *Iqbal* apply "with equal force to Article III standing" and a complaint must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Lunn v. City of Los Angeles*, 629 F. Supp. 3d 1007, 1011–12 (C.D. Cal. 2022) (quoting *Iqbal*, 556 U.S. at 678) (holding that the plaintiffs had not established standing because putative injury was not fairly traceable to the defendant's conduct). Here, Plaintiff recites a series of purported harms but none establish injury in fact; Plaintiff has not met his burden to establish Article III standing.

*First*, Plaintiff claims he is harmed because he "seeks to hire" a non-member licensee sales agent, and if he did, he would be assessed dues for that agent. Compl. ¶ 6. Plaintiff's Complaint is replete with vague allegations of Plaintiff *hypothetically* hiring a non-member agent at his brokerage and *hypothetically* being assessed dues for non-member agents. *See, e.g.*, *id*. ¶ 6 ("Plaintiff *seeks* to hire real estate sales agent licensees . . . ."); ¶ 9 ("Plaintiff *may* hire any licensed salesperson . . . . These agents *would* act in the name of Plaintiff's firm, be supervised by Plaintiff as their broker, and *would* be governed by the same fiduciary standards . . . ."); ¶ 17 ("Plaintiff *seeks* to hire sales agents who opt not to join local REALTOR® associations.") (emphases added). But Plaintiff does not allege that he has ever hired a non-member agent and been assessed the dues he complains of or that he has been unable to hire such an agent. Thus, while Plaintiff makes a conclusory statement that he has suffered "economic harm and competitive injury" (*id.* ¶ 79), the Complaint contains no facts to support that allegation.

*Second*, while Plaintiff alleges that he is harmed because the "REALTOR® system . . . results in a coercive financial penalty for Plaintiff" (*id.* ¶ 30), Plaintiff does not allege that he ever paid this alleged "coercive financial penalty" nor does he provide facts supporting *how* his business was harmed by the threat of this "penalty." It is well-established that such a theoretical harm— which is exactly what Plaintiff alleges here when he claims he is "*aware* of the enforcement and threats of enforcement, and the fees that are levied against brokers for noncompliance" (*id.* ¶ 40

(emphasis added)), without any facts suggesting such harm will actually occur—is insufficient to establish Article III standing. *See Hodl L. PLLC v. United States SEC*, No. 23-55810, 2024 U.S. App. LEXIS 21227, at *2–3 (9th Cir. Aug. 22, 2024) ("'[C]laims that are based solely on harms stemming from events that have not yet occurred, and may never occur,' do not constitute 'injury that is concrete and particularized enough to survive the standing/ripeness inquiry.'" (quoting *Alcoa, Inc. v. Bonneville Power Admin.*, 698 F.3d 774, 793 (9th Cir. 2012))). Thus, Plaintiff has not suffered any concrete injury, let alone one that is ripe. *See Rutter v. Bright Horizons Family Sol. Inc.*, No. 23-cv-233, 2024 U.S. Dist. LEXIS 13745, at *7 (W.D. Wash. Jan. 25, 2024) (finding plaintiff lacked Article III standing because allegations consisted of predictions of "likely" harm that did not make out "a concrete, non-hypothetical injury").

*Third*, Plaintiff tries to plead injury in the form of alleging that he may one day take an action—i.e., by hiring a non-member agent—which will then one day result in harm to him in the form of paying dues. Yet, all this allegation does is make clear that his claimed injury is not actual or imminent—his claim to one day *maybe* do something is entirely too theoretical and speculative, and thus insufficient for Article III standing. *See Lujan*, 504 U.S. at 564 (explaining that the "profession of an 'intent' to return to the places they had visited before . . . is simply not enough," because "[s]uch 'some day' intentions -- without any description of concrete plans, or indeed even any specification of *when* the some day will be -- do not support a finding of the 'actual or imminent' injury that our cases require").

*Finally*, Plaintiff alludes to additional "harms" in his Complaint relating to access to forms and other services, but those would be, according to the Complaint, sustained by other non-plaintiff brokers or agents, not by Plaintiff. Nor does Plaintiff anywhere allege that anyone is actually being denied access to any service—only that they are required to pay the requisite dues for them. In any event, injuries suffered by others cannot confer Article III standing on *this Plaintiff*. For example, Plaintiff vaguely (and without factual support) states that there are "*probably* . . . thousands" of agents in California and "*probably* tens of thousands [of agents] nationally" who are "unable or economically disincentivized to associate with brokers which are members of NAR affiliated associations." Compl. ¶ 37 (emphasis added). But Plaintiff is a broker and a REALTOR®

(*id.* ¶¶ 3, 5)—not a non-member agent that wants to associate with a broker—and thus Plaintiff can use the forms and services that come along with his membership, so this allegation cannot establish harm to Plaintiff.  Plaintiff also alleges that non-member agents do not have access to "industry standard forms" that the Defendant associations provide to their paying members.  *Id.* ¶ 59.  But Plaintiff does have access to these forms, as well as to other benefits and services the associations provide to him because he is a dues-paying member.  *Id.* ¶ 3.  Because these allegations do not affect Plaintiff, they are insufficiently particularized to constitute injury in fact.  *See Spokeo*, 578 U.S. at 339 (explaining that "[f]or an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way'" and that the plaintiff "must allege personal injury" (quoting *Lujan*, 504 U.S. at 560 n.1)).

Because "[e]vidence of an injury, is nowhere to be found in Plaintiff's complaint," Plaintiff lacks Article III standing and the Complaint can be dismissed on that ground alone without addressing the remaining elements of the standing inquiry.  *See Norcal Outdoor Media, LLC v. Becerra*, No. 19-cv-2338, 2020 U.S. Dist. LEXIS 241036, at *8 (E.D. Cal. Dec. 21, 2020) (granting defendant's motion for judgment on the pleadings due to plaintiff's lack of standing); *see also Caudel v. Amazon.com, Inc.*, No. 20-cv-848, 2021 U.S. Dist. LEXIS 199639, at *5 (E.D. Cal. Oct. 15, 2021) (ending standing analysis and granting motion to dismiss where the plaintiffs failed to allege injury in fact because "[i]njury in fact is the 'first and foremost of standing's three elements'").  By failing to establish injury in fact, Plaintiff also necessarily failed to establish causation and redressability.  *See Stahl Law Firm v. West*, No. 13-cv-1668, 2013 U.S. Dist. LEXIS 130780, at *17–18 & n.4 (N.D. Cal. Sept. 12, 2013) (dismissing complaint failing to allege injury in fact for lack of subject matter jurisdiction and explaining that "the Court cannot analyze causation or redressability because Plaintiff has failed to establish an injury in fact").

**B.      Plaintiff Fails to Allege Facts Sufficient to State a Sherman Act Section 1 Claim**

Plaintiff's claim under Section 1 of the Sherman Act should be dismissed.  As an initial matter, this claim should be analyzed under the rule of reason.  Per se treatment is provided only to "a small group of restraints [that] always or almost always tend to restrict competition and decrease output."  *Ohio v. Am. Express Co.*, 585 U.S. 529, 540–41 (2018).  Plaintiff's allegations arising out

DEFENDANTS' MOTION TO DISMISS                      CASE NO. 2:25-cv-01594-DC-CKD

of association membership do not warrant per se treatment; courts have analyzed similar group boycott and tying claims involving membership in trade associations under the rule of reason. *See, e.g.*, *FLAA v. Hollywood Foreign Press Ass'n*, 55 F.4th 680, 693 (9th Cir. 2022) ("The Supreme Court has cautioned us against 'condemn[ing] rules adopted by professional associations as unreasonable per se' when the 'economic impact' of those rules is 'not immediately obvious.'" (quoting *Fed. Trade Comm'n v. Indiana Fed'n of Dentists*, 476 U.S. 477, 458–59 (1986))); *Pope v. Miss. Real Est. Comm'n*, 695 F. Supp. 253, 267 (N.D. Miss. 1988), *aff'd*, 872 F.2d 127 (5th Cir. 1989) ("The court should apply the 'rule of reason' in determining whether an antitrust violation occurred by virtue of [a Board of REALTORS®'s] requirements. 'Per se' treatment is not proper in such a situation."); *Phil Tolkan Datsun, Inc. v. Greater Milwaukee Datsun Dealers' Advertising Assoc.*, 672 F.2d 1280, 1285 (7th Cir. 1982) ("Because they often depart from the traditional group boycott paradigm, membership arrangements in trade associations form an exception to the general rule that group boycotts constitute per se antitrust violations."); *Findling v. Realcomp II, Ltd*, No. 17-cv-11255, 2018 U.S. Dist. LEXIS 47082, at \*10 (E.D. Mich. Mar. 22, 2018) ("When deciding whether a local realtor board's requirements violate § 1, the Court should use the rule of reason.").

Nonetheless, Plaintiff has not alleged the three foundational requirements for a claim under Section 1 of the Sherman Act: (i) the plaintiff must suffer antitrust injury; and (ii) the defendant must have market power in a (iii) properly defined relevant market. *See, e.g.*, *Hogan v. Amazon.com, Inc.*, No. 21-cv-996, 2024 U.S. Dist. LEXIS 44574, at \*7, 10–13 (W.D. Wash. Mar. 13, 2024) (dismissing with prejudice where the plaintiffs failed to allege antitrust injury or a relevant market). Nor has Plaintiff alleged facts sufficient to state a tying or a group boycott claim under a rule-of-reason or per se theory. The Court should dismiss Plaintiff's Sherman Act claim.

1.       **Plaintiff's Complaint Should Be Dismissed Because His Ambiguous Allegations About Injury to Various Disparate Groups Do Not Establish Antitrust Injury**

Antitrust standing requires "antitrust injury"—that is, injury "of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1997); *see also Cargill, Inc. v.*

- 10 -

*Monfort of Colo., Inc.*, 479 U.S. 104, 110 n.5 (1986) (antitrust injury is a "necessary, but not always sufficient" element of antitrust standing). The antitrust injury requirement ensures that a plaintiff can recover only if his loss stems from a competition-reducing aspect or effect of the defendant's behavior. *Newman v. Universal Pictures*, 813 F.2d 1519, 1522–23 (9th Cir. 1987) (affirming dismissal of complaint for failure to allege antitrust injury because "a plaintiff [must] show[] that his injury was caused by the anticompetitive acts"). Causal antitrust injury is a mandatory, threshold requirement that must be alleged at the pleading stage. *Somers v. Apple, Inc.*, 729 F.3d 953, 963–64 (9th Cir. 2013) (affirming dismissal of monopolization claim where plaintiff did not establish antitrust injury). Thus, an antitrust complaint's allegation of a practice that may or may not injure competition is insufficient to "state a claim to relief that is plausible on its face." *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1198 (9th Cir. 2012) (dismissing tying claims where plaintiff did not establish injury to competition).

Fundamentally, Plaintiff's Complaint is entirely unclear about *who* or *what* was harmed by the alleged anticompetitive conduct, and Defendants are unable to discern Plaintiff's theory of harm to competition. This lack of clarity alone is sufficient for dismissal. *See GreenCycle Paint, Inc. v. PaintCare, Inc.*, No. 15-cv-4059, 2016 U.S. Dist. LEXIS 47960, at *22–23 (N.D. Cal. Apr. 8, 2016) (dismissing for lack of antitrust injury because "[e]ven assuming Plaintiff can ultimately allege facts supporting an antitrust violation, Plaintiff must clearly articulate how the violation harms competition and how the system at issue works; [and Plaintiff] has not done so at this point"); *Reveal Chat Holdco, LLC v. Facebook, Inc.*, 471 F. Supp. 3d 981, 997–98 (N.D. Cal. 2020) (finding the plaintiffs had not plausibly alleged antitrust injury because it was not clear how they participated in the relevant market and the complaint had only "naked assertions" describing injury without facts). Regardless, Plaintiff's tenuous allusions to harm to competition are insufficient.

***Plaintiff does not allege harm to competition resulting from brokers paying a "coercive financial penalty."*** Plaintiff alleges that Defendants' Dues Formula—specifically dues assessed for the number of non-member agents employed at a REALTOR®-affiliated brokerage—"results in a coercive financial penalty for Plaintiff." Compl. ¶ 30. Plaintiff also makes conclusory assertions that "smaller brokerages like Plaintiff's . . . are disproportionately burdened" by the Dues

Formula (*id.* ¶ 56) and that the Dues Formula "reduc[es] competition by making independent or dissenting business models financially nonviable" (*id.* ¶ 75). At the outset, Plaintiff pleads no facts to support these conclusory statements—e.g., there are no facts about how the Dues Formula reduces competition in the brokerage market, no facts about brokerages or business models that have been burdened, and no comparisons of hiring ability, costs, sales of "smaller brokerages" versus larger ones, or other instructive metrics. Plaintiff fails to explain how Defendants' alleged conduct (that allegedly impacted a product market for brokerage services), impacts the competitive position of "smaller brokerages like Plaintiff's." Compl. ¶ 56. Accordingly, Plaintiff has not pled "impact upon competitive conditions in a definable market" and therefore has not pled antitrust injury. *See McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 812–13 (9th Cir. 1988) (affirming dismissal of complaint that failed to explain the effect of defendant's conduct on competition in the alleged market and because "it is injury to the market or to competition in general, not merely injury to individuals or individual firms that is significant"); *see also Bay Area Surgical Mgmt. LLC v. Aetna Life Ins. Co.*, 166 F. Supp. 3d 988, 997 (N.D. Cal. 2015) (dismissing complaint for failure to allege antitrust injury where the plaintiffs "simply recite[d] the legal conclusion that competition has been harmed without sufficient factual support" and thus "[did] not allege[] injury to the competition in the 'market as a whole'").

Furthermore, allegations of hypothetical loss of consumer choice are too conclusory and speculative to support antitrust standing. *Feitelson v. Google Inc.*, 80 F. Supp. 3d 1019, 1028–29 (N.D. Cal. 2015) (holding that the plaintiffs failed to allege antitrust injury where allegations of hypothetical loss in search market were "too conclusory and speculative" absent facts that consumers were "prevented . . . from freely choosing among search products or prevented competitors from innovating"); *see also Arcell v. Google LLC*, 744 F. Supp. 3d 924, 932 (N.D. Cal. 2024) (dismissing complaint for lack of antitrust standing because the "mere conceivability or possibility" of antitrust injury does not suffice at the pleading stage). Like the plaintiffs in *Arcell*, who "offer[ed] no facts to make plausible their claim that if [defendant] had not foreclosed competition, an alternative market would have materialized," Plaintiff does not allege facts suggesting that there is demand for the unspecified "independent or dissenting business models"

he alleges (Compl. ¶ 75), how those business models are constrained by the Dues Formula, or how any of this relates to, or would have changed, because of the allegation that competition was harmed in the market for brokerage services. *See Arcell*, 744 F. Supp. 3d at 932.

*Plaintiff has not established harm to competition related to non-member agents who cannot participate effectively in a purported real-estate market or residential market. See, e.g.*, Compl. ¶¶ 13, 15, 25. Plaintiff alleges that non-member agents are harmed because they are not able to associate with REALTOR® brokerages for free; yet Plaintiff also alleges that *he* (a REALTOR® and a broker) is harmed by this conduct. Plaintiff cannot claim antitrust injury from a harm that did not happen to Plaintiff. *See NorthBay Healthcare Grp., Inc. v. Kaiser Found. Health Plan, Inc.*, 305 F. Supp. 3d 1065, 1076 (N.D. Cal. 2018) (rejecting antitrust injury premised on harm that happened to a non-party, but did not happen to the plaintiff).

Nor has Plaintiff plausibly established that lack of affiliation with a REALTOR® organization is itself an antitrust injury suffered by non-member agents. *Consol. Metal Prods. v. Am. Petroleum Inst.*, 846 F.2d 284, 295–97 (5th Cir. 1988) (holding that even if certification is very important to buyer acceptance, denial of certification by a trade association is not an injury to competition unless there is proof that customers were coerced or otherwise constrained to buy only certified products); *Int'l Norcent Tech. v. Koninklijke Philips Elecs. N.V.*, No. 07-cv-43, 2007 U.S. Dist. LEXIS 89946, at *24–26 (C.D. Cal. Oct. 29, 2007), *aff'd*, 323 F. App'x 571 (9th Cir. 2009) (applying the *Consolidated Metal* standard in granting the defendants' motion to dismiss and finding that promotion of an industry-wide standard is not on its own an actionable restraint of trade or otherwise anticompetitive). Indeed, Plaintiff does not allege anything about alternative options to the named REALTOR® associations.

*Plaintiff does not allege harm to competition for association membership.* Plaintiff's tying theory—which fails on its face as explained further below, *infra* § V.B.3—is based on a *portion* of association membership as the tied product—only the portion related to fees for non-member agents. Compl. ¶ 74. But a tying claim requires Plaintiff to show reduced competition in the market for the tied product—which Plaintiff alleges is "association membership (or dues payments) for non-member licensees" (*id.*). *See In re Webkinz Antitrust Litig.*, 695 F. Supp. 2d

- 13 -

987, 997 (N.D. Cal. 2010) (finding the plaintiffs' allegations "d[id] not amount to recognizable harm to competition" where the plaintiffs failed to allege that defendant's conduct "in any way affected the price of the tied products or even the overall price for the [tied product]").  Here, Plaintiff has not pled *anything* about harm to competition for "association membership (or dues payments) for non-member licensees" (i.e., the alleged tied market).  Plaintiff fails to allege how the only claimed injury that might theoretically impact Plaintiff—a disincentive for brokerage business models that seek to employ non-member agents and have them free ride for the costs that associations incur in providing services—flows from harm to association membership.  *See Pac. Steel Grp. v. Com. Metals Co.*, 20-cv-7683, 2021 U.S. Dist. LEXIS 97113, at *29–31 (N.D. Cal. May 21, 2021) (holding that the plaintiff did not plausibly show antitrust injury because allegations that plaintiff was precluded from "commercially viable way[s]" to enter the relevant market did not adequately foreclose the possibility that plaintiff could enter the market through other means).

**2.    Plaintiff's Complaint Should Be Dismissed Because He Fails to Plead Plausible Product or Geographic Markets**

Any claim under the Sherman Act requires a plaintiff to plead a relevant market—comprised of both a properly defined product market and geographic market—and that the defendant has power in that market.  *Golden Gate Pharm. Servs. v. Pfizer, Inc.*, 433 F. App'x 598, 598 (9th Cir. 2011) (affirming dismissal of complaint for failure to plead a product market).

***Product Market.***  A plaintiff must plead a product market with reference to cross-elasticity of demand—that is, products that are reasonably interchangeable with, and substitutes for, the relevant product.  *Id.*  A properly alleged product market "must encompass the product at issue as well as all economic substitutes for the product."  *Ticketmaster L.L.C. v. RMG Techs.*, Inc., 536 F. Supp. 2d 1191, 1195–96 (C.D. Cal. 2008) (dismissing complaint where product market allegations were "hopelessly muddled").  Plaintiff here alleges that "[t]he relevant product market . . . is the market for residential real estate brokerage services, including access to multiple listing services (MLS), forms, and related professional tools used in connection with representing buyers, sellers, landlord, and tenants in residential real estate transactions."  Compl. ¶ 15.  Plaintiff does not offer any other allegations about the market—such as which products are interchangeable for these

services he describes—e.g., nondescript "related professional tools"—and whether such tools can be obtained from alternative sources.  And as to MLS access, Plaintiff does not allege any facts suggesting any Defendant controls access to MLSs in California, nor could he.  *See Marin Cnty. Bd. of REALTORS®*, 16 Cal. 3d at 940.  Plaintiff's failure to describe the contours of the market at all, let alone with respect to its reasonably interchangeable products, is insufficient.

> **Geographic Market.**  "A geographic market is an 'area of effective competition where buyers can turn for alternate sources of supply.'"  *Morgan, Strand, Wheeler & Biggs v. Radiology, Ltd.*, 924 F.2d 1484, 1490 (9th Cir. 1991) (cleaned up).  Moreover, an alleged geographic market must correspond to the commercial realities of a given industry and must be economically significant.  *Brown Shoe Co. v. United States*, 370 U.S. 294, 336–37 (1962).  The Complaint also lacks allegations as to the contours of the geographic market that reflect any reality.  Indeed, what allegations Plaintiff does include are contradictory.  On the one hand, Plaintiff alleges that the geographic area is "all 50 states" (Compl. ¶ 15), and on the other hand alleges that CAR, LAR, and CVAR "dominate the *local* residential real estate sales market through the multiple listing service ('MLS')" (*id.* ¶ 3 (emphasis added)).  Again, Plaintiff has no allegations explaining *any Defendant's* relationship to MLSs, let alone where any MLS operates.  And as to services each Defendant does provide, Plaintiff has no allegations about *where* they provide those services.  Taken together, this means that CAR (a state association), and LAR and CVAR (local associations) do not, and *cannot*, operate at a national level (i.e., "all 50 states") and Plaintiff has not alleged "the area of effective competition."  *See Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096, 1104–05 (9th Cir. 1999) (affirming in part dismissal where the plaintiffs failed to allege that the market was "the area of effective competition in which buyers of these products can find alternative sources of supply, or that there are no other goods or services that are reasonably interchangeable").

> Failure to define a relevant product or geographic market is fatal to any Sherman Act claim, and the Complaint should be dismissed on this ground alone.  *See CALID, Inc. v. Apple, Inc.*, 85 F.4th 948, 955–57 (9th Cir. 2023) (affirming dismissal for failure to define the relevant market).

> **Market Power.**  Because Plaintiff has failed the threshold step of defining a relevant market, the Court need not assess whether Plaintiff has adequately pled that Defendants have market power.

*Id.* at 957 ("Without a defined relevant market in terms of product or service, one cannot sensibly or seriously assess market power."). In any event, Plaintiff has not done so. Plaintiff alleges that "NAR enjoys" a "large market share . . . in residential real estate sales." Compl. ¶ 46. But that is presumably not the same as what he alleges is the relevant market for purposes of his claims—i.e., the "market for residential real estate brokerage services." *Id*. ¶ 15. Furthermore, it is unclear what Plaintiff means by "residential real estate sales," and Defendants (trade associations) do not engage in the sale of residential real estate. And merely stating in a conclusory fashion that a defendant has "large market share" (*id.* ¶ 46), particularly in a market that is not the relevant market—or, as to CAR, LAR, and CVAR, stating nothing at all—is insufficient. *See Hip Hop Bev. Corp. v. Monster Energy Co.*, 733 F. App'x 380, 381–82 (9th Cir. 2018) (affirming dismissal of complaint that did not sufficiently allege that the defendant "had a dominant share of the market or that existing competitors lacked the capacity to increase their output to offset [the defendant]'s conduct" where complaint "merely stated that [the defendant] controlled a 'major percent' of the energy-drink market"). "Failure to allege power in the relevant market is a sufficient ground to dismiss an antitrust complaint." *FLAA*, 55 F.4th at 693 (affirming dismissal of complaint that did not plausibly allege that defendant had market power).

### 3.    Plaintiff's Allegations, that Payment for a Service Is Unlawfully Tied to that Same Service, Do Not State a Tying Claim

Plaintiff alleges that Defendants use the tying product, "MLS access and essential real estate services," to tie "association membership (or dues payments) for non-member licensees." Compl. ¶¶ 73–74. MLS access is a red herring—as mentioned throughout, Plaintiff does not allege a single fact about how he was prohibited from accessing an MLS. Therefore, Plaintiff's allegation is that the tying product is association membership and that the tied product is payment for association membership. This theory is legally insufficient and factually unsupported.

At the outset, Plaintiff has not alleged that he purchased the alleged tied product (i.e., association membership for non-member agents). His tying claim should be dismissed for this reason alone. *See Cherrone v. Florsheim Dev.*, No. 12-cv-2069, 2012 U.S. Dist. LEXIS 172778, at *15 (E.D. Cal. Dec. 4, 2012) (dismissing tying claim where the plaintiffs "fail[ed] to allege facts

1

2    indicating that any of them purchased or obtained the tied product"); *Strawflower Elecs., Inc. v.*

3    *Radioshack Corp.*, No. 05-cv-0747, 2005 U.S. Dist. LEXIS 45205, at \*26 (N.D. Cal. Sept. 20,

4    2005) (dismissing plaintiff's tying claim for failure to allege actual purchase in the tied market).

5            The rule of reason should apply, as discussed above. *See supra* § V.B. But Plaintiff fails

6    to establish the elements of a tying claim under any theory. To establish a per se tying violation

7    under Section 1 of the Sherman Act, a plaintiff must allege "(1) that the defendant tied together the

8    sale of two distinct products or services; (2) that the defendant possesses enough economic power

9    in the tying product market to coerce its customers into purchasing the tied product; and (3) that

10   the tying arrangement affects a not insubstantial volume of commerce in the tied product market."

11   *Brantley*, 675 F.3d at 1197 n.7. Under the rule of reason, a plaintiff must also show that the tying

12   arrangement results in injury to competition by "creat[ing] barriers to entry of new competitors in

13   the market for the tied product, or . . . forc[ing] buyers into giving up the purchase of substitutes

14   for the tied product." *Id.* at 1199 (cleaned up) (dismissing tying claims where plaintiff did not

15   establish injury to competition).

16           *First*, Plaintiff's tying claim must be dismissed because he does not allege two distinct

17   products. *See Bahr v. Canon U.S.A., Inc.*, 656 F. App'x 276, 277 (9th Cir. 2016) (affirming

18   dismissal of complaint where plaintiff "did not properly allege that replacement parts and services

19   are two distinct products"). Plaintiff's alleged tied product is the *payment* for the tying product—

20   and Plaintiff has not alleged that there is demand for payment of membership association dues for

21   non-member agents that is separate from receiving the benefits of that membership. *See Fireworks*

22   *Lady & Co., LLC v. Firstrans Int'l Co.*, No. 18-cv-10776, 2019 U.S. Dist. LEXIS 130887, at \*5

23   (C.D. Cal. Apr. 23, 2019) ("To establish a tie between 'distinct products or services,' a plaintiff

24   must allege facts that show 'a sufficient demand for the purchase of the tied product separate from

25   the tying product.'"); *see also Reiser v. Microsoft Corp.*, No. 98-17037, 2000 U.S. App. LEXIS

26   5901, at \*2 (9th Cir. Feb. 16, 2000) (affirming dismissal of tying claim because the plaintiff did not

27   allege the existence of a separate market involving a substantial volume of commerce existed for

28   each of the allegedly tied products—Windows-compatible file systems and the operating systems

without file systems).

1

2      And even if Plaintiff had plausibly alleged facts about Defendants' relationship to MLSs,

3  courts have rejected the argument that "tying" access to MLS services to paying for those services

4  is an unlawful tying arrangement. *See, e.g.*, *Findling*, 2018 U.S. Dist. LEXIS 47082, at \*11–12

5  (citing *United States v. Realty Multi-List, Inc.*, 629 F.2d 1351, 1358 (5th Cir. 1980)) (dismissing

6  complaint alleging that MLS providers commit Sherman Act violations "when they restrict access

7  to member brokers who have paid reasonable fees").

8      *Second*, Plaintiff has not plausibly alleged that any Defendant exerted coercive power in the

9  market for "MLS access and essential real estate services" (Compl. ¶ 73) to coerce the purchase of

10 "association membership (or dues payments) for non-member licensees" (*id.* ¶ 74). Plaintiff has

11 not alleged facts suggesting that he or any other member was *forced* to pay association membership

12 for non-member agents.

13     Moreover, it is unclear what the suite of "services" are that comprise Plaintiff's claims.

14 *Dream Big Media Inc. v. Alphabet Inc.*, No. 22-cv-2314, 2022 U.S. Dist. LEXIS 199908 at \*9–11

15 (N.D. Cal. Nov. 1, 2022) (dismissing claims as "conclusory" where the plaintiffs did not allege

16 which of defendants' products they were "forced to purchase or what competitor products they

17 could not use"). Plaintiff vaguely mentions that if he were not a REALTOR®, he would "have to

18 give up the other services that the Associations provide through CAR—such as form contracts,

19 legal hotline, free education, exclusive market data and research." Compl. ¶ 58. Plaintiff does not

20 allege that Defendants have "coercive power" over each such service—nor could he. *See Golden*

21 *Boy Promotions LLC v. Haymon*, No. 15-cv-3378, 2017 U.S. Dist. LEXIS 29782, at \*22 (C.D. Cal.

22 Jan. 26, 2017) ("A successful tying claim in particular needs to rule out alternative market-based

23 explanations for why the consumer might prefer to purchase the tied product along with the tying

24 product" (quoting *It's My Party, Inc. v. Live Nation, Inc.*, 811 F.3d 676, 683 (4th Cir. 2016)).

25 Plaintiff includes allegations about the benefits of "proprietary CAR forms" (Compl. ¶ 62), but

26 does not provide a single fact about the availability of other forms or support for his conclusions

27 that "non-member brokers are unable to operate on equal footing with member brokerages"

28 (*id*. ¶¶ 62–64). Nor does Plaintiff allege how CAR's provision of forms has anything to do with

any other Defendant. A tying claim which requires a "showing of an onerous effect on an

appreciable number of buyers coupled with a demonstration of sufficient economic power in the tying market is sufficient to demonstrate coercion." *Dream Big Media Inc.*, 2022 U.S. Dist. LEXIS 199908 at \*9–10.  Plaintiff's unsupported conclusion that "the annual price" of CAR forms "is clearly an inflated price" and "a result of the anticompetitive practices alleged herein" (Compl. ¶¶ 60–61), is insufficient to survive a motion to dismiss.  *Iqbal*, 556 U.S. 662 at 678 (holding that "mere conclusory statements" are insufficient).

Plaintiff's tying allegations are also contradictory.  On the one hand, he alleges that Defendants provide essential services that allegedly coerce the purchase of an unwanted product. *See, e.g.*, Compl. ¶ 6.  On the other, Plaintiff alleges that the Dues Formula *harms Plaintiff* because non-member agents "opt not to join local REALTOR® associations," because these sales agents "often work in areas in which REALTOR® membership provides little to no benefit." Compl. ¶¶ 17, 33.  These services cannot be "essential" to benefit Plaintiff's tying claim yet provide "little to no benefit" to support a group boycott.  *See Sacco v. Mouseflow, Inc.*, No. 20-cv-2330, 2022 U.S. Dist. LEXIS 179071, at \*10 (E.D. Cal. Sept. 30, 2022) (declining to accept as true plaintiff's "inherently contradictory" allegations).

*Finally*, the tied product is not a product at all (*see* Compl. ¶ 74), so Plaintiff has not alleged "that the tying arrangement affects a 'not insubstantial volume of commerce' in the tied product market" under a per se theory.  *Cherrone*, 2012 U.S. Dist. LEXIS 172778, at \*15.  Nor has Plaintiff pled "barriers to entry of new competitors in the market for the tied product," i.e., payment of membership association dues for non-member agents, or forcing "buyers into giving up the purchase of substitutes for the tied product," i.e., payment of membership association dues for non-member agents.  *Brantley*, 675 F.3d at 1197 n.7, 1199.  Plaintiff's tying claim does not get past the starting gate.

### 4.    Plaintiff's Amorphous Facts Fail to Support a Group Boycott Claim

While Plaintiff uses the "group boycott" label for his claims (Compl. ¶ 76), it is not at all clear from the allegations in the Complaint what form the alleged "boycott" takes.

Plaintiff alleges that the Dues Formula forces agents to join the Defendants' associations or disassociate, which "reduc[es] competition by making independent or dissenting business models

financially nonviable." *Id.* ¶ 75. Plaintiff alleges that this "is an illegal group boycott" because it "disadvantage[s] non-member competitors by directly denying or persuading or coercing members to deny relationships the competitors need in order to compete." *Id.* ¶ 76. But Plaintiff does not explain who these competitors are, who they are competitors of, what market they operate in, or any other facts necessary to assess Plaintiff's group boycott claim. And the Defendant associations do not compete with Plaintiff, or with any brokers or agents. *Id.* ¶ 10. These material ambiguities alone render this claim insufficiently pled and subject to dismissal. *See Barfuss v. Live Nation Entm't, Inc.*, No. 23-cv-1114, 2025 U.S. Dist. LEXIS 92246, at *42 (C.D. Cal. May 14, 2025) (granting motion to dismiss a group boycott claim where allegations were "far from sufficient" and where the nature and grounds for the claim were "not at all clear"); *see also Twombly*, 550 U.S. at 555 n.3 (explaining that a complaint must provide a defendant with "'fair notice' of the nature of the claim," and the "'grounds' on which the claim rests").

Even if Defendants were to take Plaintiff's label of "group boycott" at face value, the claim should still be dismissed. As discussed above, Plaintiff has not pled facts that warrant per se treatment. *See supra* § V.B. To bring a group boycott claim under the rule of reason, a plaintiff must allege "(1) the existence of a conspiracy; (2) the intention on the part of the co-conspirators to harm or restrain competition; (3) actual injury to competition; and (4) that the plaintiffs suffered antitrust injury as a result." *Bay Area Surgical Mgmt. LLC v. Aetna Life Ins. Co.*, No. 15-cv-1416, 2016 U.S. Dist. LEXIS 93263, at *24 (N.D. Cal. July 18, 2016). A "group boycott" can come in two forms: where competitors act together to boycott customers (or suppliers) to drive prices up (or down), or where competitors act together to boycott any firm in the supply chain to exclude competition *against them*. *See* Phillip E. Areeda (late) & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* § 1901e (Fourth and Fifth Editions, 2025 Cum. Supp. 2018-2023). Under any interpretation of the allegations, Plaintiff has not alleged a group boycott.

If Plaintiff is attempting to claim a "group boycott" under a theory that Defendants have engaged in concerted action to boycott "suppliers" (here, non-member real estate agents) in an effort to maintain supracompetitive prices (here, dues), Plaintiff has failed to plead that claim. To

allege a vertical "boycott" against customers or suppliers, a plaintiff must establish that the group used its market power to coerce a target to pay higher prices through economic means. *See FTC v. Superior Court Trial Lawyers Ass'n*, 493 U.S. 411, 438 (1990) (holding that lawyers' concerted refusal to represent indigent defendants to pressure the government to increase their compensation was a per se restraint of trade in violation of the Sherman Act). These cases require a threat, fortified by economic power, to withhold business that would harm the targets. *Id.* Unlike in *Superior Court Trial Lawyers*, Plaintiff has not alleged that Defendants are refusing to deal with or threatening to refuse to deal with any real estate agents or brokers. To the contrary, Plaintiff alleges that it is the brokers' and agents' *own choices* to decline to join the Defendants' REALTOR® associations and it is the brokers' (and Plaintiff's) choice to pay the requisite dues if he desires to work with a real estate licensee who is not a REALTOR®. *See, e.g.*, Compl. ¶ 33. Membership is open to all brokers and real estate agents, on equal terms—so it is not *Defendants* coordinating together to refuse to deal with certain brokers or agents; it is the certain brokers/agents choosing not to deal with Defendants.

If Plaintiff is attempting to allege the other variation of a "group boycott"—where competitors engaged in concerted action with the target to exclude a competitor *at their level*, i.e., an exclusionary boycott—Plaintiff fails here, too. An exclusionary group boycott is a "concerted attempt by a group of competitors at one level to protect themselves from competition from non-group members who seek to compete at that level." *City of Oakland v. Oakland Raiders*, 20 F.4th 441, 453 n.5 (9th Cir. 2021) (quoting *Smith v. Pro Football, Inc.*, 593 F.2d 1173, 1178 (D.C. Cir. 1978)) (affirming dismissal of group boycott claims because plaintiff did not allege an agreement to refuse to deal with the city). This type of boycott must target *the defendants'* horizontal competitor(s), i.e., must be "designed to keep one or more rivals out of the market or reduce their output so that defendants can maintain supracompetitive prices." Areeda & Hovenkamp, § 2200a. In other words, the boycott should target competitors providing MLS access and real estate services, according to Plaintiff's complaint. Compl. ¶ 73. There are no allegations supporting this theory.

Perhaps as a consequence of Plaintiff's failure to identify the form of the boycott at issue, Plaintiff's allegations of intent are also wholly conclusory. Plaintiff alleges that Defendants are

"involved in joint efforts to disadvantage non-member competitors [in a real estate brokerage market] by directly denying or persuading or coercing members to deny relationships the competitors need in order to compete." *Id.* ¶ 76. But Plaintiff does not support this implication with facts that these joint efforts occurred, let alone the intent behind them, and more is required to show anticompetitive intent. *See Shajar Abid v. Google LLC*, No. 18-cv-981, 2018 U.S. Dist. LEXIS 93649, at *10 (N.D. Cal. June 4, 2018) (dismissing an amended complaint because the plaintiff did not allege "facts showing Google sought to unreasonably restrain trade, let alone succeeded in doing so").

Nor does the alleged tool of the "boycott" satisfy the rule of reason. Plaintiff contends that Defendants' Dues Formula has the purported downstream effect of "limit[ing] broker autonomy and suppress[ing] alternative brokerage business models." Compl. ¶ 84. This is a conclusion not supported by facts, which renders Plaintiff's claims deficient. Indeed, pro rata assessments like the Dues Formula are lawful under the rule of reason when dues are based on objective, non-arbitrary criteria. *See, e.g.*, *Pope*, 695 F. Supp. at 267–69 (finding that REALTOR® dues were reasonable because "[p]rivate organizations often charge membership fees on a pro-rata basis," a practice which "distributes the organizations' expenses among all persons who receive either direct or indirect benefits of the organization"); *Realty Multi-List, Inc.*, 629 F.2d at 1386 (noting that seeking pro rata contribution, as long as it continues to bear relation to cost factors, is not anticompetitive because the MLS "must be allowed to establish fee schedules to recoup its costs of operation and to maintain its viability as a going concern"). Plaintiff has not alleged that any of the Defendants have adopted membership criteria that arbitrarily exclude him, other brokers, or sales agents. Plaintiff's allegations amount to a desire to access the services provided by the REALTOR® associations in which he is a member without abiding by the objective Dues Formula.

Finally, Plaintiff claims that Defendants' enforcement of the Dues Formula presents Plaintiff and purported similarly situated brokerages with only three options: (1) disassociate with non-member agents; (2) require non-member agents to become members of the Defendant associations; or (3) "accept a levy of non-member dues." Compl. ¶ 41. Plaintiff further asserts that this choice has the purported effect of "coercing agents into abandoning lawful real estate activity

in order to avoid financial penalties imposed on their broker" and economically pressuring brokerages to avoid business models which "seek to employ nonmember agents for legitimate real estate purposes outside the narrow scope of referral-only activity." *Id.* ¶ 43. Putting aside that Plaintiff has not alleged a single fact supporting these claims, Plaintiff concludes that because he *feels* that he cannot hire a non-member agent, Defendants are liable for an illegal group boycott of non-member agents as a per se antitrust violation, or alternatively as a restraint of trade under the rule of reason. *Id.* ¶¶ 48, 78. But Plaintiff does not allege that any Defendants refused to deal with any non-member agents, let alone that multiple Defendants collectively agreed to refuse to deal with the alleged victims of the purported group boycott. *See City of Oakland*, 20 F.4th at 454 (finding no group boycott as the plaintiff did not allege that any sports teams refused to "sell" to the plaintiff). Because of this, Plaintiff has failed to allege that Defendants illegally and concertedly refused to deal with any real estate brokers or sales agents, or otherwise unreasonably restrained trade, and so Plaintiff's Sherman Act § 1 claim should be dismissed.

### C.    Plaintiff Fails to Allege Facts Sufficient to State a Cartwright Act Claim

Plaintiff alleges that Defendants' conduct is "an unlawful group boycott, tying arrangement, and combination in restraint of trade" under the Cartwright Act. *See* Compl. ¶ 86. But Plaintiff has also failed to establish an antitrust claim for group boycott or tying under the Cartwright Act.

### 1.    Plaintiff's Group Boycott and Restraint of Trade Claims Under the Cartwright Act Fail for the Same Reasons His Sherman Act Claims Fail

Group boycott claims involving trade associations brought under the Cartwright Act are, like the Sherman Act, analyzed under the rule of reason. *See Marin Cnty. Bd. of REALTORS®*, 16 Cal. 3d at 932–34 (holding that the rule of reason applied to group boycott claims because "trade associations may perform beneficial services for their members and society"). The Ninth Circuit has held that "Cartwright Act claims raise basically the same issues as do Sherman Act claims" and that "California state courts follow federal cases in deciding claims under the Cartwright Act." *McGlinchy*, 845 F.2d at 812 n.4 (holding that the court's "conclusion with regard to the Sherman Act claims applies with equal force to appellants' Cartwright Act claims"). Plaintiff's Cartwright Act claims of group boycott fail for the same reason the Sherman Act claim fails. *See supra*

§ V.B.4; *FLAA*, 55 F.4th at 688 (affirming dismissal of claims challenging the defendant's membership policies and rejecting theory that enforcement of membership criteria is an illegal group boycott under the Cartwright Act after considering claims concurrently with Sherman Act claims); *Korea Kumho Petrochemical v. Flexsys Am. LP*, No. 07-cv-1057, 2007 U.S. Dist. LEXIS 61373, at *16 (N.D. Cal. Aug. 4, 2007) (dismissing Cartwright claims without further analysis where plaintiff failed to plead antitrust injury under the Sherman Act).

### 2.   Plaintiff's Cartwright Act Tying Claim Fails Because Plaintiff Has Not Established Either Competition in the Tied Product Market or an Actual Purchase of the Tied Product

The facts underlying Plaintiff's per se Cartwright Act tying claim are the same as those underlying his Sherman Act tying claim and are equally insufficient. *See* Compl. ¶¶ 82, 86; *supra* § V.B.3.  To establish a tying violation under the Cartwright Act, similar to the Sherman Act, a plaintiff must allege "(1) a tying agreement, arrangement or condition whereby the sale of the tying product was linked to the sale of the tied product or service; (2) the party had sufficient economic power in the tying market to coerce the purchase of the tied product; (3) a substantial amount of sale was affected in the tied product; and (4) the complaining party sustained pecuniary loss as a consequence of the unlawful act." *Becton, Dickinson & Co. v. Cytek Biosciences, Inc.*, No. 18-cv-933, 2019 U.S. Dist. LEXIS 119276, at *12–13 (N.D. Cal. July 17, 2019) (dismissing tying claims under the Cartwright Act where plaintiff failed to establish that Defendant conditioned sales of the tied product to sales of the tying product).  Under the Cartwright Act, "a per se violation is established if either element (2) or (3) is established along with elements (1) and (4)." *Id.* (quoting *Morrison v. Viacom Inc.*, 66 Cal. App. 4th 534, 542 (1998)).  As described above, the rule-of-reason should apply.  *See supra* § V.B.  Regardless, Plaintiff has not alleged any element required to make out a Cartwright Act tying claim, and as such, his claim must be dismissed.

Plaintiff has not alleged that he has made a purchase of the tied product (element 1).  And, because Plaintiff has not alleged that he has purchased any association memberships for non-member agents, he does not plead that he has suffered any pecuniary loss (element 4).  As with his Sherman Act claim, his failure to allege the actual purchase of a tied good requires dismissal.

Plaintiff has also not alleged facts to establish the second element: the party had sufficient economic power in the tying market to coerce the purchase of the tied product, "MLS access and essential real estate services." As described above, Plaintiff has not alleged market power in any properly defined relevant market and Plaintiff's allegations of "MLS access" and "real estate services" are deficient. *Supra* § V.B.2. This requires dismissal of Plaintiff's claim. *See Becton v. Cytek Biosciences Inc.*, No. 18-cv-933, 2019 U.S. Dist. LEXIS 24569, at *7–10, 11–12 (N.D. Cal. Feb. 14, 2019) (dismissing Clayton Act and Cartwright Act claims where the plaintiff failed to plead sufficient market power in the tying market).

Finally, Plaintiff has not alleged facts to establish the third element: the loss of a substantial amount of sales in the tied product market. Plaintiff has not alleged any competitors to the Defendants in the tied market from whom Plaintiff might have purchased alternative association membership for any potential non-member agents. Market foreclosure is an required element of a Cartwright Act tying claim, and a plaintiff's inability to establish that he could have purchased the tied product elsewhere requires dismissal of the claim. *Key v. Qualcomm Inc.*, 129 F.4th 1129, 1139 (9th Cir. 2025) (affirming dismissal of Cartwright Act tying claim and holding that "in the absence of evidence of some tied market foreclosure or anticompetitive impact in the tied product market, the plaintiff cannot establish an unlawful tying claim."). Plaintiff's Cartwright Act claim should be dismissed.

## VI. CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court grant Defendants' Motion to Dismiss and dismiss the Complaint (ECF No. 1), in its entirety, with prejudice.

Dated: July 14, 2025

WHITE & CASE LLP

By: */s/ Jeremy Ostrander*
Jeremy Ostrander (SBN 233489)
3000 El Camino Real
2 Palo Alto Square, Suite 900

Palo Alto, California 94306-2109
Tel: 650-213-0300
Fax: 650-213-8158

*Attorney for Defendants National Association of
REALTORS®, California Association of
REALTORS®, Lodi Association of
REALTORS®, and Central Valley Association
of REALTORS®*

DEFENDANTS' MOTION TO DISMISS                    CASE NO. 2:25-cv-01594-DC-CKD

## PROOF OF SERVICE

I, Jeremy Ostrander, certify and declare as follows:

I am employed in the county of Santa Clara, State of California.  I am over the age of 18 and not a party to the action within.  My business address is 3000 El Camino Real 2 Palo Alto Square, Suite 900, Palo Alto, California 94306-2109.

On July 14, 2025, I caused a copy of **DEFENDANTS NATIONAL ASSOCIATION OF REALTORS®, CALIFORNIA ASSOCIATION OF REALTORS®, LODI ASSOCIATION OF REALTORS®, AND CENTRAL VALLEY ASSOCIATION OF REALTORS® NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** to be served upon all counsel of record via the Court's CM/ECF system.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed on July 14, 2025 at Palo Alto, California.


*s/ Jeremy Ostrander*
Jeremy Ostrander

DEFENDANTS' MOTION TO DISMISS                                      CASE NO. 2:25-cv-01594-DC-CKD