WHITE & CASE LLP
Jeremy Ostrander (SBN 233489)
jostrander@whitecase.com
3000 El Camino Real
2 Palo Alto Square, Suite 900
Palo Alto, CA 94306-2109
Telephone:  (650) 213-0300
Facsimile:   (650) 213-8158

*Attorney for Defendants National Association
of REALTORS®, California Association of
REALTORS®, Lodi Association of
REALTORS®, and Central Valley Association
of REALTORS®*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DIAZ,<br><br>                    Plaintiff,<br><br>          v.<br><br>LODI ASSOCIATION OF REALTORS®, CENTRAL VALLEY ASSOCIATION OF REALTORS®, CALIFORNIA ASSOCIATION OF ASSOCIATION OF REALTORS®, NATIONAL ASSOCIATION OF REALTORS®, AND DOES 1 THROUGH 5, INCLUSIVE,<br><br>                    Defendants. | Case No. 2:25-cv-01594-DC-CKD<br><br>**DEFENDANTS NATIONAL ASSOCIATION OF REALTORS®, CALIFORNIA ASSOCIATION OF REALTORS®, LODI ASSOCIATION OF REALTORS®, AND CENTRAL VALLEY ASSOCIATION OF REALTORS®'S REPLY MEMORANDUM IN SUPPORT OF THE MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)**<br><br>**Date:  September 5, 2025**<br>**Time:  1:30 p.m.**<br>**Courtroom:  8, 13th Floor** |

- i -

# TABLE OF CONTENTS

**Page(s)**

I.      INTRODUCTION ........................................................................................................... 1

II.     FACTUAL ALLEGATIONS............................................................................................ 2

III.    ARGUMENT .................................................................................................................. 3

      A.      Plaintiff's Opposition Does Not Identify Facts Supporting Article III
              Standing ............................................................................................................. 3

      B.      Plaintiff Fails to Allege Facts Sufficient to State a Sherman Act Section 1
              Claim.................................................................................................................. 4

            1.      Plaintiff's Allegations Concerning Antitrust Injury Are Implausible
                   and Devoid of Facts ................................................................................ 5

            2.      Plaintiff's Claims Must Be Analyzed Under the Rule of Reason ............... 8

            3.      Plaintiff Has Not Alleged Sufficient Product or Geographic
                   Markets.................................................................................................... 8

            4.      Plaintiff Has Not Alleged a Tying Claim.................................................. 11

            5.      Plaintiff Fails to Clarify the Nature of the Group Boycott Claims ............ 13

      C.      Plaintiff Fails to Allege Facts Sufficient to State a Cartwright Act Claim ............ 15

IV.     CONCLUSION ............................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*,
190 F.3d 1051, 1057 (9th Cir. 1999)..........................................................................................5

*Associated Press v. United States*,
326 U.S. 1 (1945).......................................................................................................................15

*Beco Dairy Automation, Inc. v. Glob. Tech Sys., Inc.*,
104 F. Supp. 3d 1023 (E.D. Cal. 2015)...................................................................................5, 6

*Big Bear Lodging Ass'n v. Snow Summit, Inc.*,
182 F.3d 1096 (9th Cir. 1999)...................................................................................................10

*Brantley v. NBC Universal, Inc.*,
675 F.3d 1192 (9th Cir. 2012)..............................................................................................6, 12

*Burnett v. Nat'l Ass'n of REALTORS®*,
615 F. Supp. 3d 948, 952 (W.D. Mo. 2022) ...............................................................................7

*CALID, Inc. v. Apple, Inc.*,
85 F.4th at 948 (9th Cir. 2023)..................................................................................................11

*Care First Surgical Ctr. v. ILWU-PMA Welfare Plan*,
No. 14-cv-01480, 2014 U.S. Dist. LEXIS 165744 (C.D. Cal. July 28, 2014).........................12

*CareFusion Corp. v. Medtronic Spine LLC*,
No. 10-cv-01111, 2010 U.S. Dist. LEXIS 122004 (N.D. Cal. Nov. 1, 2010) ............................7

*Cost Management Services, Inc. v. Washington Natural Gas Co.*,
99 F.3d 937 (9th Cir. 1996).......................................................................................................10

*Davis v. Seeborg*,
No. 21-cv-1287, 2021 U.S. Dist. LEXIS 51840 (N.D. Cal. Mar. 3, 2021)..................................9

*Dream Big Media Inc. v. Alphabet Inc.*,
No. 22-cv-02314, 2022 U.S. Dist. LEXIS 199908 (N.D. Cal. Nov. 1, 2022) ...........................12

*Dream Big Media Inc. v. Alphabet Inc.*,
No. 22-cv-2314, 2024 U.S. Dist. LEXIS 124261 (N.D. Cal. Jul. 15, 2025)..........................5, 9

*Excel Fitness Fair Oaks, LLC v. Newsom*,
  No. 20-cv-02153, 2021 U.S. Dist. LEXIS 39061 (E.D. Cal. Mar. 1, 2021) ..............................8

*Eytalis v. Nat'l Ass'n of REALTORS®*,
  No. 24-cv-00147, 2025 U.S. Dist. LEXIS 140578 (N.D. Tex. June 9, 2025),
  *R. & R. adopted*, No. 24-cv-147 (N.D. Tex. July 22, 2025) ...................................................8, 9

*Fashion Originators' Guild, Inc. v. FTC*,
  312 U.S. 457, 61 S. Ct. 703 (1941) ...................................................................................14, 15

*Fid. & Guar. Ins. Co. v. Centex Homes*,
  No. 14-cv-826, 2014 U.S. Dist. LEXIS 113845 (E.D. Cal. Aug. 15, 2014)..............................4

*Findling v. Realcomp II, Ltd.*,
  No. 17-cv-11255, 2018 U.S. Dist. LEXIS 47082 (E.D. Mich. Mar. 22, 2018) ..........................4

*Flaa v. Hollywood Foreign Press Ass'n*,
  55 F.4th 680 (9th Cir. 2022)......................................................................................................8

*High Technology Careers v. San Jose Mercury News*,
  996 F.2d 987 (9th Cir.1993).....................................................................................................10

*Hogan v. Amazon.com, Inc.*,
  No. 21-cv-00996, 2024 U.S. Dist. LEXIS 44574 (W.D. Wash. Mar. 13, 2024),
  *aff'd* No. 24-1893, 2025 U.S. App. LEXIS 6517 (9th Cir. Mar. 20, 2025) ................................5

*Homie Tech., Inc. v. Nat'l Ass'n of REALTORS®*,
  No. 24-cv-00616, 2025 U.S. Dist. LEXIS 135753 (D. Utah July 15, 2025) ..........................7, 8

*In re Webkinz Antitrust Litig.*,
  695 F. Supp. 2d 987 (N.D. Cal. 2010) .....................................................................................13

*IT Casino Sols., LLC v. Transient Path*, LLC,
  605 F. Supp. 3d 1319 (N.D. Cal. Apr. 25, 2022) ........................................................................6

*Johnson v. Kuersten*,
  2025 U.S. Dist. LEXIS 10410 (E.D. Cal. Jan. 21, 2025).........................................................12

*Klor Inc. v. Stores, Inc.*,
  359 U.S. 207 (1959)...........................................................................................................14, 15

*Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n*,
  884 F.2d 504 (9th Cir. 1989).....................................................................................................6

- iv -

*Marin County Bd. of Realtors, Inc. v. Palsson,*
    16 Cal. 3d 920 (1976) ...........................................................................................4, 6, 13

*Netafim Irrigation, Inc. v. Jain Irrigation, Inc.*,
    No. 21-cv-540, 2022 U.S. Dist. LEXIS 126239 (E.D. Cal. July 15, 2022) .............................11

*Newcal Indus., Inc. v. Ikon Office Solution*,
    513 F.3d 1038 (9th Cir. 2008).................................................................................................10

*Northwest Wholesale Stationers, Inc. v. Pac. Stationery & Printing Co.*,
    472 U.S. 284 (1985)...............................................................................................................11

*Ohio v. Am. Express Co.*,
    585 U.S. 529 (2018)..................................................................................................................8

*Perry v. Rado*,
    504 F. Supp. 2d 1043 (E.D. Wash. 2007) ...................................................................................6

*PLS.com LLC v. Nat'l Ass'n of REALTORS®*,
    32 F.4th 824 (9th Cir. 2022)......................................................................................................7

*Pope v. Miss. Real Est. Comm'n*,
    695 F. Supp. 253 (N.D. Miss. 1988), *aff'd*, 872 F.2d 127 (5th Cir. 1989) ................................14

*Queen City Pizza v. Domino's Pizza*,
    124 F.3d 430 (3d Cir. 1997).......................................................................................................9

*Somers v. Apple, Inc.*,
    729 F.3d 953 (9th Cir. 2013)....................................................................................................11

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016)...................................................................................................................3

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014)................................................................................................................3, 4

*Tanaka v. Univ. of S. Cal.*,
    252 F.3d 1059 (9th Cir. 2001)..................................................................................................10

*Thimes Sols. v. Tp Link U.S. Corp.*,
    No. 19-cv-10374, 2021 U.S. Dist. LEXIS 53914 (C.D. Cal. Feb. 17, 2021).............................5

*United States v. Realty Multi-List, Inc.*,
    629 F.2d 1351 (5th Cir. 1980)..........................................................................................8, 13, 14

- v -

*Unlockd Media, Inc. Liquidation Tr. v. Google LLC*,
  No. 21-cv-07250, 2023 U.S. Dist. LEXIS 169544 (N.D. Cal. Sep. 22, 2023) ..........................7

*Verrees v. Davis*,
  No. 16-cv-01392, 2018 U.S. Dist. LEXIS 68995 (E.D. Cal. Apr. 24, 2018)..............................7

**STATUTES AND RULES**

Sherman Act § 1 .....................................................................................................................4, 11

1

## I.      **INTRODUCTION**

2        Plaintiff's Opposition (ECF No. 14, "Opp."), is littered with objectively false factual

3   statements and misdirection, all to avoid dismissal of his baseless Complaint.  What the Opposition

4   makes clear, however, is that Plaintiff is not alleging that he lacks access to a single one of the

5   products or services provided by the Defendant associations.  Rather, his case is a hypothetical:

6   Plaintiff's claim is that Defendants should not be able to charge a fee to Plaintiff, a broker and a

7   REALTOR®, if he were to someday choose to hire a non-member agent at his brokerage—a non-

8   member agent who would reap the benefits of Plaintiff's REALTOR® membership.

9        The absurdity of Plaintiff's argument is explained using one of Plaintiff's own examples—

10  Defendant CAR's proprietary forms.  *See* Opp. 3, 6.  Plaintiff's theory is that CAR should provide

11  him access to those proprietary forms for his brokerage; that agents at Plaintiff's brokerage should

12  be able to use those forms; and even if those agents are not REALTOR® members, those agents

13  should *also* be able to use those forms at no extra cost.  The alleged antitrust violation, according

14  to this theory, is that it is anticompetitive for CAR to require payment for those non-members *even*

15  *though* Plaintiff (1) can (and does) access those forms without paying anything additional because

16  he has no non-member agents; (2) can access those forms *if* he one day hires a non-member agent

17  as long as he pays the required fees for that agent; and (3) could access CAR's forms even as a non-

18  member.  Plaintiff has not been denied anything.

19       Characterizing Defendants' membership requirements as "financial penalties" is

20  insufficient to allege an antitrust claim.  To try and bridge the gap between Plaintiff's commercial

21  preference and an antitrust violation, Plaintiff makes vague assertions that Defendants "monopolize

22  products that agents and brokers need" to support tying and group boycott theories that do not pass

23  muster under the law.  While it is undoubtedly true that the Defendant REALTOR® associations

24  provide valuable services to their members, the antitrust laws do not require Defendants to provide

25  those services for free.

26       Concerningly, Plaintiff knowingly includes verifiably false factual statements in his

27  Opposition—including that Defendants control access to multiple listing services in California by

28  requiring association membership.  The speciousness of Plaintiff's underlying allegations and his

1    arguments in opposition is best illustrated by his concessions that the very decoupling of services

2    that he is asking for *currently* exists—for instance:  "[l]ess restrictive alternatives, such as direct

3    MLS access fees, exist . . . ."  Opp. 18; *see also* Compl. ¶ 58.  These admissions undermine not just

4    the plausibility of his conflicting factual allegations, but the very fabric of Plaintiff's claims.

5         Plaintiff's Opposition misconstrues the law, hyperbolizes his allegations, and fails to clarify

6    the unclear legal theories on which his claims rest.  The Complaint should be dismissed.

7    **II.    FACTUAL ALLEGATIONS**

8         Plaintiff's central claim relates to the Dues Formula (which Plaintiff calls the Variable Dues

9    Formula).  *See* MTD 4.  The Dues Formula is a pro rata assessment of real estate brokerages with

10    principals who are REALTORS®, proportional to the number of agents affiliated with the

11    brokerage who would use REALTOR® services.  *Id.*  The assessment covers the Defendants'

12    services and is determined by the number of agents who are and are not REALTOR® members.

13    *Id.*  Plaintiff argues that the Dues Formula is unlawful because fees charged for non-REALTOR®

14    members are "financial penalties" that "restrain trade."  *See* Opp. 1.

15         Plaintiff also alleges that REALTOR® membership provides agents with access to certain

16    services including contracts, legal services, and educational services.  *See, e.g.*, Compl. ¶¶ 12, 58.

17    Now, for the first time in Opposition, Plaintiff adds a service, "electronic lockboxes," that can

18    purportedly only be accessed through REALTOR® membership.  Opp. 1–3, 8, 13.  The Court

19    should ignore this new argument because lockboxes are not mentioned in the Complaint and

20    Plaintiff's description of lockbox access is not supported by any other facts pled in the Complaint.

21    The assertions are also incorrect—Defendants do not provide these lockbox services.

22         Plaintiff also doubles down on his false assertion that MLS access in California is restricted

23    to REALTOR® members.  In California, membership with a REALTOR® organization *is not*

24    *required* for MLS access.  MTD 4–5.  To bolster these allegations, Plaintiff now identifies two

25    specific MLSs—MetroList (Opp. 3) and California Regional MLS ("CRMLS") (*id.* 8 n.1)—that he

26    did not plead in the Complaint.  Plaintiff argues that he is "compelled" to join MetroList (*id.* 3) and

27    that CRMLS can be accessed only by joining through CVAR or LAR (*see id.* 8 n.1).  These

28    statements are not just unpled, they are untrue.  While LAR is a part shareholder of MetroList

- 2 -

1   (which is not wholly owned by REALTOR® associations), that is irrelevant.  Neither MLS requires

2   REALTOR® membership, as a quick search of these websites and MLS rules could verify.  *See*

3   Request for Judicial Notice ("RJN"), Ex. 1 (MetroList application form which does not require

4   REALTOR® membership); Ex. 2 (MetroList MLS Rule 4 "Participation and Authorized Access"

5   showing that participant categories do not require REALTOR® membership); Ex. 3 (CRMLS Rule

6   4 "Participation and Authorized Access," not requiring REALTOR® membership).

7   **III.   ARGUMENT**

8          Plaintiff does not identify any allegations in his Complaint showing that he has established

9   standing which is grounds alone for dismissal under Rule 12(b)(1).  But even if Plaintiff's

10  hypothetical desire to hire a non-member agent without paying for that agent to use Defendants'

11  services could suffice for Article III standing, the Complaint should still be dismissed for failure to

12  plead claims under the Sherman Act or Cartwright Act, warranting dismissal under Rule 12(b)(6).

13         **A.     Plaintiff's Opposition Does Not Identify Facts Supporting Article III Standing**

14         Plaintiff does not have Article III standing because he has not alleged that he has suffered

15  injury resulting from the conduct he alleges is unlawful.  Plaintiff argues that "economic harm—

16  manifesting as foregone opportunities and coerced payments—is neither hypothetical nor

17  speculative" because he risks "threats of enforcement and denial of essential services" if he does

18  not pay the membership dues owed for the service he receives.  Opp. 4.  But Plaintiff's words are

19  empty because he has not alleged any "foregone opportunities" or "coerced payments."  *See* MTD

20  6–8.  Plaintiff relies on *Spokeo, Inc. v. Robins* (Opp. 4), but the Supreme Court's explication of

21  "concrete" harms highlights the paucity of Plaintiff's allegations here.  578 U.S. 330, 441.

22         Plaintiff seems to claim that his harm is that he cannot "hire nonmembers without penalty."

23  Opp. 5.  Of course, there is no legal requirement that organizations allow individuals to benefit

24  from the organizations' services without payment.  In any event, contrary to Plaintiff's improper

25  characterizations of the law, the "mere threat of harm" is not sufficient to establish an injury.  *See*

26  Opp. 5.  Rather, as stated in the case cited by Plaintiff, "a future injury may suffice if the threatened

27  injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur."  *Susan B.*

28  *Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (internal quotations omitted).  Plaintiff has

- 3 -

suffered no tangible or identifiable harm; in his own words, he "*seeks* to hire real estate sales agent licensees" unaffiliated with NAR, but has not alleged that he ever took action to hire any employees which would trigger higher fees.  MTD 7 (citing Compl. ¶ 6).  Plaintiff does not claim that he was banned from hiring a non-member agent or that such agents were prevented from themselves becoming members.  Nor has he pled facts underlying financial harm he would suffer by paying the fee for such an agent, and does not allege that he sought to hire such an agent and that agent would not become a member.  In short, under any interpretation of Plaintiff's allegations, he has not established that the Dues Formula actually prevented him from doing *anything*, let alone prevented him from action he was plausibly going to take.

Plaintiff attempts to offset his lack of injury by claiming that non-members lack access to the services paying REALTOR® members have.  Requiring membership for services is not, alone, an antitrust violation.  *See Marin Cty. Bd. of Realtors, Inc. v. Palsson*, 16 Cal. 3d 920, 934 (1976); *Findling v. Realcomp II, Ltd.*, No. 17-cv-11255, 2018 U.S. Dist. LEXIS 47082, at *10 (E.D. Mich. Mar. 22, 2018) ("Indeed, it is widely recognized that private organizations may reasonably tie their benefits and services to membership.").  Even assuming that membership for services is an injury, it is not an injury to Plaintiff.  MTD 8.  Under Plaintiff's reasoning, *any* perceived restriction on a business practice constitutes injury to create standing to bring a lawsuit without *any* facts showing that the restriction actually prevented the plaintiff from taking a specific action.  That is not the law.  *Fid. & Guar. Ins. Co. v. Centex Homes*, No. 14-cv-826, 2014 U.S. Dist. LEXIS 113845, at *9 (E.D. Cal. Aug. 15, 2014) (dismissing case where the plaintiffs could not have suffered the harm at "the time they filed this suit" where insurance policy contract had not yet been breached).

**B.    Plaintiff Fails to Allege Facts Sufficient to State a Sherman Act Section 1 Claim**

Plaintiff fails to allege that Defendants' alleged conduct led to harm to competition; Plaintiff ignores the arguments in Defendants' Motion to Dismiss (ECF No. 12, "MTD") and ignores that the rule of reason is the applicable standard; and Plaintiff's arguments for application of the per se standard are incorrect as a matter of law.  Plaintiff's Opposition also confirms that the Complaint lacks plausible allegations concerning the relevant product or geographic market, a tying claim, or a group boycott claim.

1
2

**1.** **Plaintiff's Allegations Concerning Antitrust Injury Are Implausible and Devoid of Facts**

3       Antitrust injury requires Plaintiff to show "injury of the type the antitrust laws were intended

4  to prevent and that flows from that which makes defendants' acts unlawful." *Hogan v.*

5  *Amazon.com, Inc.*, No. 21-cv-996, 2024 U.S. Dist. LEXIS 44574, at *8 (W.D. Wash. Mar. 13,

6  2024), *aff'd* No. 24-1893, 2025 U.S. App. LEXIS 6517 (9th Cir. Mar. 20, 2025).

7       ***Plaintiff does not define a market in which an antitrust injury could have occurred.*** To

8  show antitrust injury, the plaintiff must have "suffered its injury in the market where competition

9  is being restrained." *Hogan*, 2025 U.S. App. LEXIS 6517, at *3 (quoting *Am. Ad Mgmt., Inc. v.*

10 *Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1057 (9th Cir. 1999)). But, even in his Opposition, Plaintiff

11 cannot articulate in which market(s) the Dues Formula has led to antitrust injury, and thus dismissal

12 is appropriate. *Thimes Sols. v. Tp Link U.S. Corp.*, No. 19-cv-10374, 2021 U.S. Dist. LEXIS 53914,

13 at *11 (C.D. Cal. Feb. 17, 2021) (dismissing claims where the "ambiguous product market"

14 prevented the court from evaluating the "purported antitrust injury").

15      Instead, like the Complaint, the Opposition only lists an amalgam of disparate ways the

16 Dues Formula has supposedly impacted "competition" in undefined markets. Opp. 6. Plaintiff

17 identifies "products and services for brokers and agents." *Id.* He then cites "contract forms,

18 electronic key access [for] MLS listings, and MLS services" as examples of services at issue. *Id.*

19 Aside from failing to buttress these arguments with any facts as to the contours of such purported

20 markets (with reference to substitution, demand, and/or interchangeability), this approach of

21 "grouping together disparate products or services" is insufficient. *See Dream Big Media Inc. v.*

22 *Alphabet Inc.*, No. 22-cv-2314, 2024 U.S. Dist. LEXIS 124261, at *12 (N.D. Cal. Jul. 15, 2024)

23 ("[I]t is plaintiff's burden to allege with supporting facts a valid market, including showing the

24 propriety of grouping together disparate products or services into a market."); *infra* at 9.

25      ***Plaintiff cannot show an injury to competition.*** A consequence of Plaintiff's failure to

26 articulate a relevant market is that Plaintiff fails to show injury to competition in any market.

27 Whether Defendants have harmed competition in the market for *all* products and services or some

28 subset is unknowable from Plaintiff's Complaint. *See Beco Dairy Automation, Inc. v. Glob. Tech*

1  *Sys., Inc.*, 104 F. Supp. 3d 1023, 1039 (E.D. Cal. 2015) ("[P]roving injury to competition ordinarily

2  requires the claimant to prove the relevant geographic and product markets and to demonstrate the

3  effects of the restraint within those markets." (internal quotations omitted)).

4         Take, for example, Plaintiff's argument about CAR's contracts.  Even if a market for these

5  contracts were pled (it is not), and even if Plaintiff pled harm to such market (he did not), Plaintiff

6  undermines his entire theory as he claims *both* that he cannot hire non-member agents and risk his

7  membership because he will lose access to forms *and* that he *can buy forms without being a*

8  *member*.  Opp. 6 (recognizing "nonmember access" to CAR's proprietary forms).  In other words,

9  he (or others) can get the forms with or without paying dues, and therefore there is no injury to

10  anyone.  Plaintiff confusingly faults Defendants for "point[ing] to no viable alternatives" (Opp. 6),

11  but on a motion to dismiss, Defendants have no burden to identify facts.  *IT Casino Sols., LLC v.*

12  *Transient Path*, LLC, 605 F. Supp. 3d 1319, 1326 (N.D. Cal. Apr. 25, 2022) (explaining that, on a

13  motion to dismiss, it is not the defendants' burden to identify facts in the complaint to support their

14  arguments).  And Plaintiff himself identified at least one viable alternative:  lawyers.  Compl. ¶ 63.

15  And Plaintiff's use of buzzwords like the price of the contract forms being an "inflated price

16  barrier" is not sufficient to bring an antitrust case.  *See Brantley v. NBC Universal, Inc.*, 675 F.3d

17  1192, 1198 (9th Cir. 2012) ("[A] section one claimant may not merely recite the bare legal

18  conclusion that competition has been restrained unreasonably" (quoting *Les Shockley Racing, Inc.*

19  *v. Nat'l Hot Rod Ass'n*, 884 F.2d 504, 507–08 (9th Cir. 1989))).

20         Plaintiff also claims as a form of injury to competition that the Dues Formula results in "a

21  reduced supply of agents, suppressed business models, and harm to consumers through diminished

22  choice and inflated costs."  Opp. 6, 16.  But the Complaint paragraphs he cites to support these

23  sweeping claims do not proffer a single *fact* in support.  Such conclusory statements are insufficient

24  to establish harm to competition.  *See Perry v. Rado*, 504 F. Supp. 2d 1043, 1048 (E.D. Wash.

25  2007) (dismissing complaint because facts pled under a group boycott theory did not rise above

26  conclusory allegations of injury to competition).

27         Finally, to the extent Plaintiff intends to assert antitrust injury based on the vague and

28  counterfactual allegations concerning MLSs, as explained in Defendants' MTD, under *Palson*,

- 6 -

1    MLSs in California *do not require REALTOR® association membership*.  MTD 5, 15.  Yet Plaintiff

2    brazenly cites *Palsson* while doubling down on factually wrong arguments that Defendants

3    maintain "control of the market" through MLS access.  *E.g.*, Opp. 7, 17.  And *PLS.com, LLC v.*

4    *Nat'l Ass'n of REALTORS®*, 32 F.4th 824 (9th Cir. 2022) and *Burnett v. Nat'l Ass'n of*

5    *REALTORS®*, 615 F. Supp. 3d 948, 952 (W.D. Mo. 2022), also cited by Plaintiff (Opp. 7), involve

6    MLS rules that are unrelated to Plaintiff's claims.

7            ***Plaintiff must have suffered the antitrust injury himself.***  In an attempt to bolster his

8    antitrust injury claims, Plaintiff identifies harm to "nonmember licensees that desire to work in

9    residential real estate" who supposedly "are less able to find brokerages to work for."  Opp. 7.  Most

10   fundamentally, Plaintiff ignores that he is not a non-member agent, and thus, this harm cannot

11   establish antitrust injury as to him.  MTD 13; *see also Verrees v. Davis*, No. 16-cv-01392, 2018

12   U.S. Dist. LEXIS 68995, at *36 (E.D. Cal. Apr. 24, 2018) (granting motion to dismiss and

13   recognizing that a "[p]laintiff must state how *she personally* suffered an anti-trust injury as a result

14   of Defendants' anti-competitive practices with a sufficient degree of specificity to allow Defendants

15   to respond to her allegations" (emphasis added)); *CareFusion Corp. v. Medtronic Spine LLC*, No.

16   10-cv-01111, 2010 U.S. Dist. LEXIS 122004, at *27 (N.D. Cal. Nov. 1, 2010) ("[A]ntitrust injury

17   requires plaintiff to have suffered injury in the relevant market.").  But Plaintiff's theory is also

18   fundamentally flawed because these non-member agents do not have to become members;

19   brokerages have the choice to pay a fee under the Dues Formula to hire non-member agents.  *See*

20   Compl. ¶ 41.  And Plaintiff cannot point to a single fact in the Complaint supporting these

21   conclusory allegations—e.g., the number of non-member licensees, data supporting that such non-

22   member agents struggle to find brokerages to work for, and whether the non-member brokerage

23   fees have resulted in a reduction in agents in a definable market.  Such facts are necessary to

24   establish antitrust injury under Plaintiff's theory.  *See Unlockd Media, Inc. Liquidation Tr. v.*

25   *Google LLC*, No. 21-cv-07250, 2023 U.S. Dist. LEXIS 169544, at *14 (N.D. Cal. Sep. 22, 2023)

26   (finding that "generic assertions" of harm "without backing facts sufficient to make these claims

27   plausible" are insufficient to support an antitrust claim); *Homie Tech., Inc. v. Nat'l Ass'n of*

28   *REALTORS®*, No. 24-cv-616, 2025 U.S. Dist. LEXIS 135753 at *24, 33 (D. Utah July 15, 2025)

- 7 -

1    (dismissing group boycott claims for lack of antitrust injury).

2        Finally, Plaintiff does not address Defendants' argument about the dearth of allegations

3    about harm to competition for association membership (MTD 13–14), conceding this point. *Excel*

4    *Fitness Fair Oaks, LLC v. Newsom*, No. 20-cv-2153, 2021 U.S. Dist. LEXIS 39061, at *15, 22

5    (E.D. Cal. Mar. 1, 2021) (holding failure to address arguments in an opposition constituted waiver).

6        **2.    Plaintiff's Claims Must Be Analyzed Under the Rule of Reason**

7        Ignoring the arguments in Defendants' Motion (MTD 9–10), Plaintiff argues for a per se

8    analysis.  Opp. 9–10, 22.  Plaintiff's arguments about per se treatment are simply incorrect as a

9    matter of fact and law.  Plaintiff cited *Ohio v. Am. Express Co.* (Opp. 10), but that case defeats

10   Plaintiff's point; the Supreme Court specifically said "*only* . . . restraints imposed by agreement

11   between competitors [] qualify as unreasonable per se."  585 U.S. 529, 541 (2018) (emphasis added)

12   (internal quotations omitted).  Plaintiff does not allege that Defendants are competitors with each

13   other (or with Plaintiff), and indeed the Opposition concedes that Defendants are in a vertical

14   relationship.  Opp. 16.  Plaintiff also calls the Dues Formula a "naked restraint of trade" (*id.* 9), but

15   this is belied by Plaintiff's admissions that Defendants provide services to Plaintiff and other

16   members.  Compl. ¶ 3; MTD 1.  Accordingly, the rule of reason is the appropriate standard.  *See,*

17   *e.g.*, *Flaa v. Hollywood Foreign Press Ass'n*, 55 F.4th 680, 690 (9th Cir. 2022) (applying the rule

18   of reason and dismissing claims, noting "membership in almost any trade association provides some

19   kind of economic benefit.  It does not follow that every trade association must open itself to all

20   comers"); *Eytalis v. Nat'l Ass'n of REALTORS®*, No. 24-cv-147, 2025 U.S. Dist. LEXIS 140578,

21   at *19–21 (N.D. Tex. June 9, 2025) (applying rule of reason and dismissing claim alleging tying of

22   association membership and MLS), *R. & R. adopted*, No. 24-cv-147 (N.D. Tex. July 22, 2025),

23   ECF No. 7.  The group boycott claim should also be analyzed under the rule of reason.  *See* MTD

24   9–10.  Plaintiff relies on *Realty Multi-List* to argue for per se treatment (Opp. 14), but that case

25   states that per se treatment is not "proper" when analyzing similar claims.  629 F.2d at 1362.

26       **3.    Plaintiff Has Not Alleged Sufficient Product or Geographic Markets**

27       Plaintiff's  Opposition  lumps  together  "services,"  comprising  various  products  and

28   addressing certain parts of those services and attempts to pass that off as a product market.  *See*

- 8 -

Opp. 10 ("The product market encompasses residential real estate brokerage services, including contract forms, MLS access, and tools."). But Plaintiff has not alleged that there is a market for "brokerage services" separate from the individual services within the "brokerage services" category (e.g., forms). Nor does he allege that use of any of those individual services is not a substitute for what Plaintiff vaguely lumps together as "brokerage services."

Because of the amorphous nature of Plaintiff's allegations of the product(s) at issue, Defendants cannot adequately respond and the Complaint must be dismissed. *Dream Big Media Inc.*, 2024 U.S. Dist. LEXIS 124261 at *12 (dismissing case because "it is plaintiff's burden to allege with supporting facts a valid market, including showing the propriety of grouping together disparate products or services into a market" and that it is "unclear that they have done so").

Contrary to the Opposition (at 11), Defendants are not asking for undue specificity; they are asking for allegations of a legally sufficient market. *See* MTD 14–16. As noted in *Queen City Pizza, Inc. v. Domino's Pizza, Inc.* (Opp. 10), "a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, . . . is legally insufficient and a motion to dismiss may be granted." 124 F.3d 430, 436 (3d Cir. 1997). Plaintiff's failure to plead any facts regarding the interchangeability or cross-elasticity of the market warrants dismissal. *See Eytalis*, 2025 U.S. Dist. LEXIS 140578, at *14 (holding that the "Court is unable to determine whether a relevant product market exists" when the complaint did not contain "facts to support analysis of either the interchangeability of a multiple listing services or its cross-elasticity of demand").

Indeed, it is clear that Plaintiff's implausible and conclusory allegations do not suffice. For instance, with respect to forms, Plaintiff admits that there *are* alternatives: one can hire a lawyer to draft forms. Compl. ¶ 63; *supra* at 6. And Plaintiff's new assertion in the Opposition is perplexing: Plaintiff admits that "contract forms products and services exist nationwide" (Opp. 10), but his explanation that these are not reasonable alternatives simply because forms for use in California involve California law is implausible. *Davis v. Seeborg*, No. 21-cv-1287, 2021 U.S. Dist. LEXIS 51840, at *4–5 (N.D. Cal. Mar. 3, 2021) (explaining that the court "need not accept . . . implausible allegations" where plaintiff argued that judicial defendants' acts of issuing

- 9 -

1    an R&R and adopting that R&R "were not judicial in nature").

2        Plaintiff's remaining arguments as to the sufficiency of his product market arguments are
3    equally unavailing.  Plaintiff's claim that "an allegation of no substitutes suffices with factual
4    support," is not supported by the cases he cites.  Opp. 10–11.  In *Tanaka v. Univ. of S. Cal.*, 252
5    F.3d 1059, 1063 (9th Cir. 2001), the court affirmed dismissal of the claims for failure to adequately
6    plead a relevant market.  *Cost Management Services, Inc. v. Washington Natural Gas Co.*
7    (Opp. 11), is pre-*Twombly*, and in any event, that complaint contained detailed statistical
8    allegations not present here.  99 F.3d 937, 951 (9th Cir. 1996).  Further, *Newcal Indus., Inc. v. Ikon*
9    *Office Solution*, does not establish a lenient pleading standard for market definition (Opp. 11);
10   *Newcal* mandates that Plaintiff must first plead a "facially []sustainable" relevant market, which
11   Plaintiff does not do.  513 F.3d 1038, 1044 (9th Cir. 2008).  Finally, Plaintiff's cherry-picked
12   language in *High Technology Careers v. San Jose Mercury News*—a case decided on summary
13   judgment—is procedurally and factually inapposite.  Opp. 11 (citing 996 F.2d 987, 990 (9th Cir.
14   1993)).  There, the court determined on summary judgment that an issue of fact existed as the
15   opposing parties had "presented strong evidence and compelling arguments to support their
16   respective definitions of the relevant market."  *High Tech. Careers*, 996 F.2d at 990.

17       Plaintiff's case on geographic market fares no better.  His claim that the Dues Formula is a
18   "[n]ationwide policy with California impacts" (Opp. 11), is not sufficient to plead a geographic
19   market.  If Plaintiff is asserting that Defendants have market power in all of California (*id.* 3, 9,
20   18), he cannot square this with his allegations that CAR, LAR, and CVAR "dominate the *local*
21   residential real estate sales market. . . ."  *See* Compl. ¶ 3; MTD 15.  In short, Plaintiff does not
22   allege the "area of effective competition" and has not pled a geographic market.  *Big Bear Lodging*
23   *Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096, 1104–05 (9th Cir. 1999) (affirming in part dismissal
24   where the plaintiffs failed to allege that the market was "the area of effective competition in which
25   buyers of these products can find alternative sources of supply, or that there are no other goods or
26   services that are reasonably interchangeable").

27       **Market Power.**  Plaintiff does not meaningfully respond to the market power arguments in
28   Defendants' Motion (at 15–16).  Since Plaintiff has failed the threshold step of defining a relevant

- 10 -

market, the Court need not assess the sufficiency of Plaintiff's market power allegations. *CALID, Inc. v. Apple, Inc.*, 85 F.4th 948, 957 (9th Cir. 2023) ("Without a defined relevant market in terms of product or service, one cannot sensibly or seriously assess market power."). But even were the Court to consider them, Plaintiff's citation to *Northwest Wholesale Stationers, Inc. v. Pac. Stationery & Printing Co.*, for the proposition that Defendants "possess market power through dominance and exclusionary practice" is misdirected. Opp. 11 (citing 472 U.S. 284, 294 (1985)). *Northwest* states "some showing must be made that the [defendant] possesses market power." *Id.* at 298. Plaintiff has no allegations that establish such a showing. And if by stating that Defendants' market power is "evidenced by their ability to enforce the [Dues Formula] nationwide" (Opp. 13), Plaintiff intends to assert an atypical, direct-evidence theory of market power, he has not done so. *Netafim Irrigation, Inc. v. Jain Irrigation, Inc.*, No. 21-cv-540, 2022 U.S. Dist. LEXIS 126239, at *17 (E.D. Cal. July 15, 2022) (dismissing Section 1 Sherman Act claim where plaintiff did "not provide sufficient direct evidence of market power").

### 4. Plaintiff Has Not Alleged a Tying Claim

Plaintiff's Opposition, which does not seriously respond to Defendants' Motion (MTD 16–19), reinforces that the Complaint does not state a tying claim as Plaintiff is still unable to meet any of the three elements required for a tying claim. Opp. 12–14.

First, Plaintiff does not address the argument that his Complaint asserts tied and tying products that are not different products ("MLS access and essential real estate services," and "association membership (or dues payments) *for non-member licensees*"). Compl. ¶¶ 73, 74 (emphasis added); MTD 16. Instead, Plaintiff's Opposition distorts his allegations by arguing— contrary to the Complaint—that the tied product is association membership, and the tying products are apparently all of and/or either: (1) "forms;" (2) MLS access; or (3) "lockbox access." Opp. 12–13. Plaintiff's inability to articulate the legal theories on which he is basing his claims is prejudicial and render them appropriate for dismissal. *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013) (dismissing Sherman Act claims and holding "[d]ismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory"). Regardless, they still fail.

*No tying claim based on forms.* Plaintiff concedes that CAR's proprietary forms are available to members and non-members (Opp. 6, 10; Compl. ¶ 60), so there is nothing to tie, and Plaintiff's tying claim based on the forms fails. *See Dream Big Media Inc. v. Alphabet Inc*., No. 22-cv-02314, 2022 U.S. Dist. LEXIS 199908, at *6–8 (N.D. Cal. Nov. 1, 2022) (holding that plaintiffs fail to allege a tying claim because the plaintiff did not allege facts establishing that Google's mapping API services were unable to otherwise be purchased individually). Nor has Plaintiff plausibly alleged that there are no alternatives (*supra* § III.B.3) for CAR's forms. This also makes Plaintiff's claim that he "is a member of the Defendant associations because of the tied product CAR forms" implausible. Opp. 13.

*No tying claim based on MLS access.* Plaintiff hedges on MLS being a tied product, stating that MLS "was traditionally, and likely still is, a tying product." Opp. 12. Yet the examples Plaintiff belatedly cites in Opposition show the opposite—Association membership is not a requirement for MLS access, consistent with California law. *Supra* at 2 (citing Exs. 1, 2, 3 showing MetroList and CRMLS participation requirements). Regardless, Plaintiff must plausibly plead that the defendant did tie the two products, not *maybe or could have* tied them together. *See Brantley*, 675 F.3d at 1197 n.7 (holding the first element of a tying claim is "that the defendant *tied* together the sale of two distinct products or services" (emphasis added)).

*No tying claim based on lockbox access.* Finally, Plaintiff introduces facts about lockboxes for the first time in Opposition in an effort to offer another ground for a tying claim. None of the Complaint paragraphs Plaintiff cites in support of these wholly new assertions (Opp. 7), actually reference lockboxes. *See* Compl. ¶¶ 3, 12, 13, 16, 58, 73. These assertions can be ignored by the Court. *Johnson v. Kuersten*, No. 21-cv-828, 2025 U.S. Dist. LEXIS 10410, at *18 (E.D. Cal. Jan. 21, 2025) (granting motion to dismiss and noting that "plaintiff may not add new material in his opposition in an effort to defeat defendant's motion to dismiss . . . [i]nstead, the sole focus is the operative pleading"); *Care First Surgical Ctr. v. ILWU-PMA Welfare Plan*, No. 14-cv-01480, 2014 U.S. Dist. LEXIS 165744, at *14 (C.D. Cal. July 28, 2014) ("Arguments made in briefs are not facts alleged in the complaint, and the court cannot consider them in deciding a motion to dismiss."). But even if such factual statements were included in the Complaint, Plaintiff's

- 12 -

1   statements are wholly insufficient to plausibly plead Defendants' connection to lockboxes. Opp.

2   13. Plaintiff seems to argue that lockboxes are tied through MLS access, but as explained, MLS

3   access is not predicated on REALTOR® membership. *See supra* at 1–3.

4       Finally, Plaintiff's platitudes about a "competitive market" (Opp. 13) are insufficient to

5   indicate a harm in the market. *See In re Webkinz Antitrust Litig.*, 695 F. Supp. 2d 987, 997 (N.D.

6   Cal. 2010) (granting motion to dismiss and noting that "conclusory allegations of anticompetitive

7   effect are insufficient without supporting facts as to how competition in the tied markets has

8   actually been reduced or harmed").

9                  **5.**      **Plaintiff Fails to Clarify the Nature of the Group Boycott Claims**

10       The Opposition does not address the Complaint's ambiguities on a group boycott theory.

11   MTD 19–22. Instead, Plaintiff now claims a "vertical combination" boycott (Opp. 14) and

12   "exclusionary tactics" (*id.* 15–16). But Plaintiff cannot point to facts pled in the Complaint

13   necessary for his group boycott claim, such as who the competitors are, who they compete with,

14   and what market they operate in. *See* Opp. 14–19; MTD 20.

15       Plaintiff appears to argue that the Dues Formula serves as the exclusionary tool which

16   Defendants use to enforce the boycott to "exclude outsiders" and should receive per se treatment.

17   *See* Opp. 17–18. Plaintiff claims the Defendants' Dues Formula reflects "direct involvement in

18   their members' business operations," which shows the "anticompetitive *potential*" of a trade

19   association. *Id.* (citing *Realty Multi-List*, 629 F.2d 1351, 1376 n.52) (emphasis added). But in the

20   very portion of *Realty Multi-List* on which Plaintiff relies, the court is *distinguishing* the

21   competitive implications of REALTOR® associations from MLSs and noted that since the MLS in

22   that case "is not affiliated with a Board of REALTORS®, this case presents this distinction in its

23   starkest form." 629 F.2d 1351, 1376 n.52.

24       Additionally, *Realty Multi-List* cites *Palsson*, noting that "[t]he California Supreme Court

25   held in a very similar case that, while a Board of REALTORS® *may exclude nonmembers from*

26   *access to many of its services*, it cannot exclude real estate brokers from access to the Board-

27   sponsored [MLS]." *Id.* (emphasis added). Plaintiff also ignores that *Realty Multi-List* evaluated

28   the claims there under the rule of reason and expressly allowed for a "pro rata contribution toward

- 13 -

1    the [cost of] the maintenance and the development of [the private realty organization], including

2    the accumulation of reasonable reserves." *Id.* at 1386.

3          Plaintiff's belief that no case has analyzed the Dues Formula under an antitrust theory is

4    wrong. Opp. 2. Plaintiff also villainizes the concept of preventing free riding (Opp. 1, 14, 16, 18).

5    In making both assertions, Plaintiff ignores *Pope v. Miss. Real Est. Comm'n*, 695 F. Supp. 253

6    (N.D. Miss. 1988), *aff'd*, 872 F.2d 127 (5th Cir. 1989). MTD 22. *Pope* granted summary

7    judgement for defendants, stating:

8        Private organizations often charge membership fees on a pro-rata basis. This
     practice distributes the organizations' expenses among all persons who receive
9    either direct or indirect benefits of the organization. . . . Both NAR and MAR assess
     dues to member boards of REALTORS® . . . based upon the number of persons
10   who benefit from the national and state associations. Each REALTOR®,
     REALTOR® associate who belongs to the local board, and **salesperson licensee**
11   **affiliated with the REALTORS'® firm, who is not even a member of the board**
     **of REALTORS®, increases the liability of the member boards**. . . . The
12   plaintiffs have failed to produce probative evidence sufficient to establish that the
     dues formula was unreasonable or discriminatory.
13

14   *Id*. at 268 (emphasis added).

15         While *Realty Multi-List* does not establish that fees that "bear no relation to cost factors"

16   are *prima facie* unlawful as Plaintiff implies (Opp. 2), Plaintiff has not pled any facts aside from

17   the cost to join the Associations (Compl. ¶¶ 19–22) that go to this assessment. Plaintiff's own

18   Complaint establishes that benefits provided by the Associations that he receives as a broker

19   member flow to his agents. MTD 3–4. Those allegations make implausible Plaintiff's argument

20   that simply stating the amount of fees charged is sufficient to state an antitrust violation because

21   brokers must pay a fee for non-members (Opp. 2). *See Pope*, 695 F. Supp. 253 at 267–68 (rejecting

22   plaintiff's "conclusory opinion" that the pro rata dues formula "was an attempt to discriminate

23   against him" and "was being done to exclude him from membership").

24         Nor do Plaintiff's other cases elucidate his claims here. *Klor Inc. v. Stores, Inc.*, 359 U.S.

25   207 (1959) (Opp. 14), involved a "wide combination consisting of manufacturers, distributors and

26   a retailer" directed by a competitor to Klor's, which prevented the consumer from purchasing

27   certain products and producers from selling their products. *Id.* at 213. *Klor* is about a practice that

28   was directed to eliminating a business rival. And *Fashion Originators' Guild, Inc. v. FTC*, 312

U.S. 457 (1941) (Opp. 15) is similarly inapplicable, as that case involved a total prohibition on its members (horizontal competitors) from dealing with certain types of manufacturers who sold products from non-members, resulting in a harm to the members' own competitors.  312 U.S. at 461.  *Associated Press v. United States*, 326 U.S. 1 (1945) (Opp. 17) is also inapposite.  There, the by-laws of an organization "granted each member powers to block its non-member competitors from membership," which prevented non-members of the ability of buying news from purchasing news from the Associated Press.  No such limitations exist here; Plaintiff has not plead any information about competitors to the Defendants and non-REALTOR® agents are free to join a REALTOR® or non-REALTOR® affiliated brokerage (*see* Compl. ¶ 11).

Unlike each of the cases on which Plaintiff relies, Plaintiff has not articulated any competitors or business rivals of the Defendants that are being boycotted.  Plaintiff appears to recognize that distinction—noting that his theory is one of "vertical combination."  Opp. 14.  Plaintiff's arguments do not undermine the reasons for dismissal in Defendants' Motion, including that there simply is no boycott where no services are unavailable to Plaintiff.  MTD 21–23.

### C.    Plaintiff Fails to Allege Facts Sufficient to State a Cartwright Act Claim

Plaintiff does not address Defendants' arguments for dismissal under the Cartwright Act.  Opp. 18.  In addition to the elements of the Sherman Act, which, as discussed, Plaintiff has failed to meet, Plaintiff is also required to plead that he made a purchase of the tied product, sufficient economic power by the Defendants in the tied market, and that he suffered a substantial amount of sales in the tied market.  *See* MTD 24–25.  In his opposition, Plaintiff does not argue that he made a purchase of association memberships for non-member agents, that Defendants had sufficient market power, or that he suffered a substantial loss of sales in the tied product market.  *See* Opp. 18.  As such, Plaintiff's Cartwright Act claim should be dismissed.

### IV.    CONCLUSION

For the reasons set forth above and in Defendants' Motion to Dismiss (ECF No. 14), Defendants respectfully request that the Court grant Defendants' Motion to Dismiss and dismiss the Complaint (ECF No. 1), in its entirety, with prejudice.

Dated:  August 7, 2025

WHITE & CASE LLP


By: */s/ Jeremy Ostrander*
Jeremy Ostrander (SBN 233489)
3000 El Camino Real
2 Palo Alto Square, Suite 900
Palo Alto, California 94306-2109
Tel: 650-213-0300
Fax: 650-213-8158

*Attorney for Defendants National Association of REALTORS®, California Association of REALTORS®, Lodi Association of REALTORS®, and Central Valley Association of REALTORS®*

- 16 -

## PROOF OF SERVICE

I, Jeremy Ostrander, certify and declare as follows:

I am employed in the county of Santa Clara, State of California. I am over the age of 18 and not a party to the action within. My business address is 3000 El Camino Real 2 Palo Alto Square, Suite 900, Palo Alto, California 94306-2109.

On August 7, 2025, I caused a copy of **DEFENDANTS NATIONAL ASSOCIATION OF REALTORS®, CALIFORNIA ASSOCIATION OF REALTORS®, LODI ASSOCIATION OF REALTORS®, AND CENTRAL VALLEY ASSOCIATION OF REALTORS®'S REPLY MEMORANDUM IN SUPPORT OF THE MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)** to be served upon all counsel of record via the Court's CM/ECF system.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed on August 7, 2025 at Palo Alto, California.


_s/ Jeremy Ostrander_
Jeremy Ostrander

DEFENDANTS' REPLY MEMORANDUM IN
SUPPORT OF THE MOTION TO DISMISS

CASE NO. 2:25-cv-01594-DC-CKD